Kenneth HEYMAN and John Rublowsky, Plaintiffs,

v.

David SALLE, et al., Defendants.

No. 88 Civ. 2488 (RPP).

United States District Court, S.D. New York.

July 11, 1989.

Murphy & Zissu by Michael Zissu (Susan J. Steiger, of counsel), New York City, for plaintiffs.

John B. Koegel, New York City, for defendants.

## OPINION AND ORDER

ROBERT P. PATTERSON, Jr., District Judge.

Plaintiffs Kenneth Heyman and John Rublowsky have brought claims against defendants David Salle and Jean Kallina, alleging (1) federal copyright infringement pursuant to 17 U.S.C. § 101 et seq. (the "Copyright Act"), (2) federal trademark infringement pursuant to section 43(a) of the Lanham Act (15 U.S.C. § 1125(a)), (3) unfair competition under New York State law, and (4) a violation of Article 14 of the New York Arts and Cultural Affairs Law. Defendant Salle has also filed a counterclaim seeking compensatory and punitive damages, alleging that plaintiffs wrongfully injured his goodwill and reputation by sending letters to certain book stores de-

manding that they not sell defendant Salle's book.[1]

Defendants have moved, and plaintiffs have cross-moved, for summary judgment pursuant to Fed.R.Civ.P. 56.

## FACTUAL BACKGROUND OF CASE

Plaintiff Heyman is a professional photographer. In 1964, Heyman collaborated with plaintiff Rublowsky in the creation of a book entitled "Pop Art," which described the then avant-garde art movement known as "pop art" and contained both photographs and text. Page 162 of the book Pop Art contains a photograph taken by Heyman on which the present action is based. The photograph (the "Scull Photo") shows the Scull family (with a maid in attendance) at the dinner table. A pop art painting (by James Rosenquist) is partially visible on the wall behind the table. The book Pop Art was published in July 1965, and a copyright was immediately acquired for the book. However, there was no copyright acquired for the Scull Photo itself.

Defendant Salle is a well-known artist, who, in 1982, agreed to design all the scenery and costumes for a certain opera entitled "Birth of a Poet." "Birth of a Poet" was staged by certain non-profit organizations at various locations abroad and at the Brooklyn Academy of Music. Salle was compensated on a minimum basis for designing such set.[2]

Salle designed several huge backdrops for the stage, including the one which is the subject of this action. He has admitted that he ripped the Scull Photo out of the Pop Art book and (along with several artists assisting him) made the scene it depicted into a backdrop (the "Backdrop").[3] Salle has indicated that he did not attempt to make the backdrop into an exact copy, but only wanted to capture the imagery conveyed by the Scull Photo.

---

1. Plaintiffs have settled this action with the other named defendants.

2. Salle's deposition testimony indicates that, in reality, the artists working in this type of non-profit project end up contributing their own money—this in fact was the case as Salle has testified that he personally donated approxi-

mately $100,000. (one considerable portion of such donation was a piece of art work that he owned).

3. The Scull Photo is approximately five and one-half by seven and one-quarter inches. The Backdrop is approximately fifty by thirty feet.

At the conclusion of the Brooklyn Academy performance, Salle asked defendant Kallina, a friend and photographer, to take several photographs of the performance (at least one of which included the stage and Backdrop). *See* Salle's Notice of Motion, Exhibit F. Kallina gave Salle "contact sheets" of such photographs at no charge except the cost of the film.

In 1987, upon being asked by a friend and writer, Salle consented to an interview which would be a basis for a monograph on Salle. This monograph, entitled "Salle," became a part of a series being published by Vintage Books concerning contemporary artists. Salle was neither paid for the interview, nor has he been compensated by Vintage Books.[4] Pages 52–53 of this monograph contained one of Kallina's photographs of the stage and the Backdrop. Kallina was compensated for her consent to use the photograph in the monograph.

In 1986, the Institute of Contemporary Art at the University of Pennsylvania organized an exhibition of some of Salle's works. In connection with that exhibition, a catalogue was prepared, which contained a picture of the Backdrop.

At the end of 1987, plaintiff Heyman was shown the Salle monograph, including the Kallina photograph. Plaintiffs sent cease and desist letters to Salle, Kallina, and certain bookstores and publishers.[5]

DISCUSSION

Summary judgment under Fed.R.Civ.P. 56(c) will be granted only if the movant shows that (1) there is no genuine issue as to any material fact, and (2) movant is entitled to judgment as a matter of law. In deciding a motion for summary judgment, the "fundamental maxim" is that the court " 'cannot try issues of fact; it can only determine whether there are issues to be tried.' " *Donahue v. Windsor Locks Bd. of Fire Comm'rs*, 834 F.2d 54, 58 (2d Cir.1987) (quoting *Heyman v. Commerce*

*& Indus. Ins. Co.*, 524 F.2d 1317, 1319–20 (2d Cir.1975)). "Moreover, in determining whether a genuine issue has been raised, a court must resolve all ambiguities and draw all reasonable inferences against the moving party." *Id.* at 57.

It is well settled that to establish a claim for copyright infringement plaintiffs must prove (1) ownership of a valid copyright, and (2) copying by defendant. *Eden Toys v. Marshall Field & Co.*, 675 F.2d 498, 499 (2d Cir.1982); 3 M. Nimmer, Nimmer on Copyright, § 13.01 at 13–3 (1981) (hereinafter "Nimmer").

■ Copying must be shown by (1) evidence of access to the copyrighted work and (2) substantial similarity between the copyrighted work and the allegedly infringing work. *Sid & Marty Krofft Television v. McDonald's Corp.*, 562 F.2d 1157, 1162 (2d Cir.1977).

There is no dispute that the book Pop Art is subject to a valid copyright, or that Salle had access to the book and the Scull Photo. Defendants argue that plaintiffs never obtained a copyright for the Scull Photo itself. Plaintiffs respond that such picture is protected under the Copyright Act since it is part of a protectible compilation and collective work.

■ Section 103(a) of the Copyright Act extends copyright protection to compilations. A compilation is defined as "a work formed by the collection and assembling of preexisting materials or of data that are selected, coordinated, or arranged in such a way that the resulting work as a whole constitutes an original work of authorship ..." 17 U.S.C. § 101. Those compilations which consist of contributions which themselves constitute "works" capable of copyright are called collective works. A collective work is defined as "a work, such as a periodical, anthropology or encyclopedia, in which a number of contributions, constituting separate and independent works in

---

4. The record indicates that there is an agreement for Salle to be compensated if 90,000,000 monographs are sold, but Salle has indicated that he never had a realistic expectation that such an "astronomical" amount would ever be reached.

5. The letter mailings to the bookstores and publishers constitute the subject matter of the counterclaim.

themselves, are assembled into a collective whole." 17 U.S.C. § 101.

Section 103(b) of the Copyright Act states that "[T]he copyright in a compilation or derivative work extends only to the material contributed by the author of such work, as distinguished from the preexisting material employed in the work, and ... does not affect or enlarge the scope, duration, ownership, or subsistence of, any copyright protection in the preexisting material."

The book Pop Art consists of a compilation of photographs (taken by plaintiff Heyman as well as third parties) and also textual material. Defendants contend that under section 103(b), a copyright in the compilation or collective work does not extend copyright protection to the separate component parts of the compilation or collective work. Plaintiffs argue that section 103(b) states that copyright protection in a compilation does extend to material contributed by the author himself. Therefore, since Heyman took the Scull Photo, the copyright of the book Pop Art extends to the Scull Photo itself as a component part that the author himself contributed.

This Court is persuaded that the Scull Photo is protected under the Copyright Act because it is itself an original work contributed by plaintiff Heyman, and part of a copyrighted work. In *Educational Testing Services v. Katzman*, 793 F.2d 533 (3d Cir.1986), a testing service had obtained a valid copyright in a certain test it had created, but had not obtained a copyright with respect to the individual questions composing the test. The Third Circuit held that the copyright in the compilation extended copyright protection to the individual questions themselves, because the testing service had itself created and contributed the individual questions (the test consisted of old questions in a new form). The court went on to state that "if the questions are copyrightable, then the [testing service's] registrations of the tests as compilations covered the questions." Relying on § 103(b) the court held that "the statutory premise that the copyright in a compilation

extends to the constituent material contributed by the author is express ..."

In addition, section 404 of the Copyright Act supports a finding that the Scull Photo was protected by the copyright in the book Pop Art. Such section provides that "a separate contribution to a collective work may bear its own notice of copyright.... However, a single notice applicable to the collective work as a whole is sufficient to [satisfy the notice requirements] regardless of the ownership of copyright in the contributions."

■ There remains the question of whether there is a "substantial similarity" between the Backdrop and the Scull Photo. The test for determining "substantial similarity" in this Circuit is whether "an average lay observer would recognize the alleged copy as having been appropriated from the [original] copyrighted work." *Ideal Toy Corp. v. Fab-Lu Ltd.*, 360 F.2d 1021, 1022 (2d Cir.1966).

■ After reviewing and comparing the Scull Photo and a photograph of the Backdrop, the Court finds that there are many similarities between the Scull Photo and the Backdrop. However, there are also substantial differences between these two works which raise genuine issues of material fact with respect to the question of "substantial similarity." Although defendant has admitted utilizing the Scull Photo, there are several important differences between the Scull Photo and the Backdrop. First, there appears to have been no exact copying. Although the Backdrop appears to have substantially captured the image of the Scull Photo,[6] a viewer of the Backdrop could well fail to identify the family as Scull family members. Second, the size of the Backdrop is huge in comparison to the Scull Photo—the Backdrop is thirty by fifty feet; the photograph is approximately five and one-half inches by seven and one-quarter inches. Third, the Backdrop was not presented alone, but appeared as the background in the overall context of an opera scene (and only for approximately five minutes). As shown by the Kallina photo-

6. In fact, this is precisely what Salle wanted to do by copying the Scull Photo.

graphs, the Backdrop was simply a component of a larger image created by the performers being superimposed on it. Fourth, the Backdrop consisted of a different medium, which created somewhat of a different image and appearance. Fifth, Salle colored his Backdrop predominantly orange, compared to the black and white Scull Photo.

These differences, considered together, prevent this Court from making a finding of substantial similarity as a matter of law, or that an average lay observer would recognize the Backdrop (or defendant Kallina's photographs of the Backdrop) as appropriations from the Scull Photo. On the other hand, the similarities between the Scull Photo and the Backdrop are sufficient to prevent this Court from granting defendants' motion for summary judgment on this issue.

Accordingly, the motions and cross-motions for summary judgment are denied with respect to plaintiffs' copyright infringement claim.

Defendants' motion for summary judgment should be granted with respect to plaintiff's trademark infringement claim under § 43(a) of the Lanham Act. There is no evidence that plaintiffs have obtained a registered or common law trademark of any kind in connection with the Scull Photo. On the contrary, it is difficult to comprehend how plaintiffs can allege that a photograph published in this manner can be subject to a trademark. Plaintiffs have submitted no evidence with respect to this issue in opposition to defendants' motion for summary judgment. Nor have the defendants attempted to address this claim in their moving memoranda, although defendants moving papers specifically contend that there is no trademark infringement as a matter of law.[7] Under Fed.R.Civ.P. 56(e), "[w]hen a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as other-

wise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If the adverse party does not so respond, summary judgment, if appropriate, shall be entered." Accordingly, defendants' motion for summary judgment with respect to plaintiff's federal trademark infringement claim is granted, and that claim is dismissed.

Plaintiffs' complaint alleges that the same acts giving rise to the alleged copyright infringement give rise to state law claims of unfair competition and violation of Article 14 of the New York Arts and Cultural Affairs Law. However, neither plaintiffs' pleadings, motion papers, nor memoranda clarify in what manner the claims under state law arise. These pleadings fail to state the precise section of Article 14 that is alleged to have been violated. Plaintiffs' memoranda of law do not address these claims. Accordingly, the Court is not in a position to grant summary judgment for plaintiffs or defendants with respect to these state law claims because, without further elaboration, it is unable to evaluate their nature.

---

**7.** Defendants argue that there is no "likelihood of confusion" as a matter of law. However, the Court need not reach this issue because there is

no evidence that suggests that plaintiffs have a registered or common law trademark in the Scull Photo.