**IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT**

_____

No. 99-31051
_____

PEEL & COMPANY, INC.,

                    Plaintiff-Appellant-Cross-Appellee,

versus

THE RUG MARKET,

                    Defendant-Appellee-Cross-Appellant.

_____

Appeals from the United States District Court
for the Eastern District of Louisiana
_____
January 24, 2001

Before HIGGINBOTHAM, WIENER, and DENNIS, Circuit Judges.

WIENER, Circuit Judge:

Plaintiff-Appellant Peel & Company, Inc. ("Peel") appeals the summary judgment dismissal of its claim of copyright infringement. We reverse and remand for further proceedings by the district court.

**I.
FACTS AND PROCEEDINGS**

In 1991, Peel designed a rug and named it "Directoire" for the early Eighteenth Century French historical period that inspired the rug's pattern. The design, later copyrighted, features two rows of panels, each of which is decorated with a central floral design and

trompe l'oeil[1] triangular shading intended to suggest a coffered ceiling. The Directoire also features laurel garlands, punctuated by rosettes, surrounding each panel, and an outer border of repeated squares. Although other Directoire-style rugs exist, Peel claims that it alone incorporates the trompe l'oeil triangular shading and square-patterned border into its design.

Peel, a rug wholesaler, arranged for the manufacture of the Directoire, which is handwoven wool and retails for over $1,000. Some 4,000 copies of the rug have been sold throughout the United States since 1993. It is displayed in at least 100 showrooms, including four in the Los Angeles area, and it has appeared in numerous trade shows as well as in Peel's catalog.

Defendant-Appellee The Rug Market ("Rug Market"), based in Los Angeles, imports rugs and sells them wholesale to retailers. One of its primary suppliers is Ambadi Enterprises ("Ambadi"), of New Delhi, India, which designs, manufactures, and sells home furnishings, including rugs. Ambadi has been supplying rugs to Rug Market since at least 1986, and is the source of thirty to forty percent of its merchandise.

In 1998, Rug Market began selling the "Tessoro" rug, made by Ambadi. The Tessoro is machine-woven of jute and retails for $99.

_____

[1] This French phrase has been defined to mean "deception of the eye esp[ecially] by a painting: as . . . the use in mural and ceiling decoration of painted detail suggestive of architectural or other three-dimensional elements but often characterized by exaggerated perspective, abrupt contrast of light and shade, or general stylization which stresses artificiality." Webster's Third New International Dictionary (unabridged) 2451 (1986).

In photographs, it strongly resembles the Directoire, featuring the same general scale and proportionate size among the elements. Key differences between the Tessoro and the Directoire include the Tessoro's elimination of the garlands and rosettes between panels; its use of one instead of two types of flower medallions; its use of four instead of nine colors; and, in general, its coarser make and lower quality. Peel maintains that the Tessoro is a copy of the Directoire and that these differences only make the infringing rug faster and cheaper to manufacture.

Peel issued a written demand that Rug Market cease selling the Tessoro rug, then sued for deliberate copyright infringement. The district court granted Rug Market's pretrial motion for summary judgment. The court found that Peel had failed to submit evidence sufficient to establish that it would be able to carry its burden of proving Ambadi's access to the Directoire design at trial. The court also found that the rugs were not similar enough to imply access, finding that, under the "ordinary observer" test, "no reasonable person would mistake these two rugs as being the same." The district court concluded that Peel's circumstantial evidence of copying was inadequate to support a copyright claim. The court also denied without comment Rug Market's motion for costs and attorneys' fees.

Peel appeals the dismissal of its copyright infringement case on summary judgment. Rug Market cross-appeals the denial of costs and attorneys' fees.

## II.
## ANALYSIS

A.  Standard of Review

This case is on appeal from a dismissal on summary judgment. We therefore review the record de novo, applying the same standard as the district court.[2]  A motion for summary judgment is properly granted only if there is no genuine issue as to any material fact.[3] A fact issue is material if its resolution could affect the outcome of the action.[4]  In deciding whether a fact issue has been created, the court must view the facts and the inferences to be drawn from them in the light most favorable to the nonmoving party.[5]

The standard for summary judgment mirrors that for judgment as a matter of law.[6]  Thus, the court must review all of the evidence in the record, but make no credibility determinations or weigh any evidence.[7]  In reviewing all the evidence, the court must disregard all evidence favorable to the moving party that the jury is not required to believe, and should give credence to the evidence

---

[2]  Morris v. Covan World Wide Moving, Inc., 144 F.3d 377, 380 (5th Cir. 1998).

[3]  Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).

[4]  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

[5]  Olabisiomotosho v. City of Houston, 185 F.3d 521, 525 (5th Cir. 1999).

[6]  Celotex, 477 U.S. at 323.

[7]  Reeves v. Sanderson Plumbing Products, Inc., 530 U.S. 133, 120 S. Ct. 2097, 2102 (2000).

4

favoring the nonmoving party as well as to the evidence supporting the moving party that is uncontradicted and unimpeached.[8]

## B. Copyright Infringement

To prevail on a copyright infringement claim, a plaintiff must show (1) ownership of a valid copyright and (2) unauthorized copying.[9] Peel's copyright is no longer in dispute,[10] leaving copying as the central issue of this appeal. As direct evidence of copying is rarely available, factual copying may be inferred from (1) proof that the defendant had access to the copyrighted work prior to creation of the infringing work and (2) probative similarity.[11]

To determine access, the court considers whether the person who created the allegedly infringing work had a reasonable opportunity to view the copyrighted work. A bare possibility will not suffice; neither will a finding of access based on speculation

---

[8] Id. at 2110.

[9] Alcatel USA, Inc. v. DGI Technologies, Inc., 166 F.3d 772, 790 (5th Cir. 1999); Norma Ribbon & Trimming, Inc. v. Little, 51 F.3d 45, 47 (5th Cir. 1995).

[10] Rug Market asserted on appeal that Peel's rug design is "uncopyrightable," but did not brief the issue beyond stating that it "adopts and incorporates by reference" its arguments below. Therefore, Rug Market has waived the issue. See Cinel v. Connick, 15 F.3d 1338, 1345 (5th Cir. 1994); Yohey v. Collins, 985 F.2d 222, 224-25 (5th Cir. 1993).

[11] See Engineering Dynamics, Inc. v. Structural Software, Inc., 26 F.3d 1335, 1340 (5th Cir. 1994), opinion supplemented and reh'g denied, 46 F.3d 408 (5th Cir. 1995); Ferguson v. Nat'l Broad. Co., 584 F.2d 111, 113 (5th Cir. 1978).

or conjecture.[12]  In this court, "[i]f the two works are so <u>strikingly</u> similar as to preclude the possibility of independent creation, 'copying' may be proved without a showing of access."[13]

Not all copying is legally actionable, however.  To prevail on a copyright infringement claim, a plaintiff also must show substantial similarity between the two works:[14]  "To determine whether an instance of copying is legally actionable, a side-by-side comparison must be made between the original and the copy to determine whether a layman would view the two works as 'substantially similar.'"[15] Although this question typically should be left to the factfinder,[16] summary judgment may be appropriate if the court can conclude, after viewing the evidence and drawing inferences in a manner most favorable to the nonmoving party, that no reasonable juror could find substantial similarity of ideas and expression.[17]  If, after the plaintiff has established its prima

---

[12]  <u>Ferguson</u>, 584 F.2d at 113.

[13]  <u>Id.</u> (emphasis added).

[14]  <u>Alcatel</u>, 166 F.3d at 790.

[15]  <u>Creations Unlimited, Inc. v. McCain</u>, 112 F.3d 814, 816 (5th Cir. 1997); <u>see also</u> <u>King v. Ames</u>, 179 F.3d 370, 376 (5th Cir. 1999).

[16]  <u>Creations Unlimited</u>, 112 F.3d at 816.

[17]  <u>Narell v. Freeman</u>, 872 F.2d 907 (9th Cir. 1989); <u>see also</u> <u>Herzog v. Castle Rock Entertainment</u>, 193 F.3d 1241, 1247 (11th Cir. 1999) ("Summary judgment historically has been withheld in copyright cases because courts have been reluctant to make subjective determinations regarding the similarity between two works.  However, non-infringement may be determined as a matter of law on a motion for summary judgment, either because the similarity

facie case, the defendant offers evidence of independent creation, the plaintiff has the burden of proving that the defendant in fact copied the protected material.[18]

In this case, the district court found that the Directoire design could be copyrighted, and that Peel possesses a valid copyright.[19] Therefore, the issues on appeal are whether Peel has failed to establish the existence of a genuine issue of material fact as to whether Rug Market copied its Directoire design, and whether any such copying was legally actionable, that is, whether the rugs are substantially similar.

1. Factual Copying

a. Access

As this court stated in Ferguson v. National Broadcasting Co., a copyright infringement plaintiff must establish "a reasonable possibility of access" by the defendant.[20] Peel adduced circumstantial evidence of the broad sale and display — in showrooms, trade shows and catalogs — of the Directoire rug in the United States, including Los Angeles. We find this evidence adequate under Ferguson to raise a genuine issue of material fact

---

between two works concerns only non-copyrightable elements of the plaintiff's work, or because no reasonable jury, properly instructed, could find that the two works are substantially similar.") (citations omitted).

[18] Miller v. Universal City Studios, Inc., 650 F.2d 1365, 1375 (5th Cir. 1981).

[19] See supra note 10.

[20] 584 F.2d 111, 113 (5th Cir. 1978).

as to whether Rug Market had access to the design.  In particular, Rug Market employees and the company's principal, Michael Shabtai, attended rug trade shows where the Directoire was exhibited, and Shabtai admitted that he may have visited Peel's showroom, where the Directoire was displayed.

Whether designers for Ambadi, located in New Delhi, India, had a reasonable possibility of access presents a more difficult question.  The district court found that Peel produced no evidence of Ambadi's direct access to the Directoire, concluding that "[i]nstead, Peel argues that Rug Market had access and confers this knowledge to Ambadi."

The parties sharply contest whether Ambadi had access to the Directoire design.  Peel argues access by Ambadi under two alternative theories: wide dissemination[21] and chain of events.[22] Even though we have not expressly adopted either theory, we are satisfied that the facts of this case can be adequately addressed under Ferguson's "reasonable possibility of access" test.  The question here is whether Peel has produced more than speculation and conjecture regarding access by Ambadi.

Peel emphasizes that Rug Market "supplied designs and samples

---

[21]  See, e.g., Cholvin v. B. & F. Music Co., 253 F.2d 102 (7th Cir. 1958); Arnstein v. Porter, 154 F.2d 464 (2d Cir. 1946); Primcot Fabrics v. Kleinfab Corp., 368 F. Supp. 482 (S.D.N.Y. 1974).

[22]  See, e.g., Moore v. Columbia Pictures Indus., Inc., 972 F.2d 939 (8th Cir. 1992); Kamar Int'l, Inc. v. Russ Berrie & Co., 657 F.2d 1059 (9th Cir. 1981); De Acosta v. Brown, 146 F.2d 408 (2d Cir. 1944).

8

on a regular basis for Ambadi to use in manufacturing carpets for Rug Market," and that Shabtai admitted that the Tessoro design probably was created in response to his request for "a masculine, geometric type rug." In addition, Ambadi's manager, Ishwinder Singh, visits the United States — including Los Angeles — at least once a year. Peel argues that Singh and his design representatives review magazines and travel around this country to observe designs and obtain ideas, in addition to visiting exhibitions and fairs and researching in design institute libraries. These contacts, Peel argues, establish at least the existence of a genuine issue of material fact regarding access, thereby making the grant of summary judgment inappropriate.

Rug Market counters that Peel has not established that Ambadi had access to the Directoire design. In particular, Rug Market states that it "did not provide any pictures, rugs, information or input to Ambadi in connection with the design and manufacture of the Tessoro Jute. Rug Market simply purchased the Tessoro Jute from Ambadi." Furthermore, "Ambadi's designers are not familiar with the work entitled Directoire and did not see it, review it or copy it when making the Tessoro Jute rug. . . . [T]he Tessoro Jute rug is in line with the tile rugs being continuously created by Ambadi for over a decade and is an original creation." Shabtai also states that he never acquired or possessed a Directoire rug or a picture of it, but concedes that he could have seen the rug at trade shows.

9

The broad dissemination of the Directoire to the rug trade distinguishes this case from our two leading copyright access cases, Ferguson[23] and McGaughey v. Twentieth Century Fox Film Corp.[24] Each of those cases involved a copyrighted work distributed to only a few individuals, then allegedly infringed by third parties. In Ferguson, a composer gave a copy of her musical composition to each of six individuals or companies, all of which copies were returned to her.[25] The musician she accused of infringement had only unrelated contacts with one of the companies, and stated that he never had heard of the plaintiff or her composition before she filed suit.[26] No access was found.

In McGaughey, the author of an unpublished novel mailed a copy of that manuscript to Fox Television some two months after another writer registered his completed script for the movie "Dreamscape."[27] The TV studio declined interest in the novel and returned it to the author. The "Dreamscape" film script later was rewritten, and Fox Film Corporation ultimately served as the distributor of the finished film. "All of the people involved in the writing of the original script and the rewrite averred that they had no knowledge of the appellant or his novel until this lawsuit," the McGaughey

---

[23] Ferguson v. Nat'l Broad. Co., 584 F.2d 111 (5th Cir. 1978).

[24] 12 F.3d 62 (5th Cir. 1994).

[25] Ferguson, 584 F.2d at 112.

[26] Id. at 113.

[27] McGaughey, 12 F.3d at 64.

court wrote.[28]  The court declined to find access to the plaintiff's novel, noting that to do otherwise it would have to assume not only that the Dreamscape creators lied, but that Fox made copies of the novel before returning it to the author and distributed those copies.[29]

This case appears to have more in common with a recent opinion from the Southern District of New York, Odegard, Inc. v. Costikyan Classic Carpets, Inc.,[30] than with either Ferguson or McGaughey. Odegard involved allegations that a carpet designer infringed a competitor's copyrights in three carpets.  In that case, the district court found adequate evidence of access to the various carpets based on their wide dissemination and opportunities the defendants had to view them.[31]  Those opportunities included a visit by one of the defendants to a designer showroom next door to another showroom where one of the plaintiff's carpets was displayed; the defendants' attendance at a carpet show where two of the plaintiff's carpets were shown; and a defendant's examination of the type of magazine in which two of the plaintiff's carpets were advertised.[32]  Although the access evidence in Odegard may be more specific than that proffered by Peel, it appears to be of the

---

[28]  Id. at 65.

[29]  Id.

[30]  963 F. Supp. 1328 (S.D.N.Y. 1997).

[31]  Id. at 1336-37.

[32]  Id.

same type.

We conclude that Peel has raised a genuine issue of material fact as to whether the Directoire was widely disseminated among those involved in the United States rug trade, thus providing both Rug Market and Ambadi access to the Directoire. A jury should decide whether Peel has shown "a reasonable possibility of access" by the defendant.[33]

b. Probative Similarity

The second step in deciding whether Peel has raised a genuine issue of material fact regarding factual copying of the Directoire requires determining whether the rugs, when compared as a whole, are adequately similar to establish appropriation. The district court concluded that the Tessoro was not substantially similar to the Directoire. The court acknowledged that "these two rugs at first glance do have a certain similarity to each other," but held that "no reasonable person would mistake these two rugs as being the same. The two rugs quite obviously do not have the same aesthetic appeal." The court focused on the differences between the two, including the number of colors used, appearance of depth or flatness, and the additional detail found in the Directoire.

Rug Market argues that the two rugs do not have the same aesthetic appeal because its Tessoro does not evoke the Directoire period of French history. Peel asserts that the differences between the two rugs are relatively small and are consistent with

_____

[33] Ferguson, 584 F.2d at 113.

12

shortcuts taken to make a cheap copy. The two sides submitted conflicting expert affidavits assessing the similarity of the rugs.

We believe that reasonable minds — particularly minds of reasonable laymen — could differ as to whether these two rugs are probatively similar. Even though the Tessoro design omits some of the more complex elements employed in the design of the Directoire, an average lay observer could find the appearance of the two rugs similar enough to support a conclusion of copying. The rugs have the same overall proportion, and generally employ the same color schemes. They use the same number of repeating panels, each of which features shaded triangles and a central floral medallion. Their repeating square-patterned borders also are similar. We cannot agree with the district court that the two rugs are so dissimilar that, as a matter of law, no reasonable jury could find copying here.

2. Substantial Similarity

As noted above, though, not all copying is legally actionable. To support a claim of copyright infringement, the copy must bear a substantial similarity to the protected aspects of the original. The Supreme Court has defined this essential element of an infringement claim as "copying of constituent elements of the work that are original."[34] Under the ordinary observer or audience test used in making this factual determination, a layman must detect

_____

[34] Feist Publ'ns, Inc. v. Rural Tel. Serv. Co., 499 U.S. 340, 361 (1991) (emphasis added).

13

piracy "without any aid or suggestion or critical analysis by others.  The reaction of the public to the matter should be spontaneous and immediate."[35]

Peel argues that the district court erred in failing to identify the original constituent elements of its Directoire design: trompe l'oeil panels with central floral medallions and triangular shading, along with a border of small squares.  On de novo review, we agree with Peel.  It has raised genuine issues of material fact as to whether the claimed original constituent elements of the Directoire are unique and therefore protectible by copyright, and whether their use in the two rugs is substantially similar.[36]  A jury ultimately may conclude that the similarities between the Tessoro and protected constituent elements of the Directoire are insubstantial, but we are convinced that they are sufficiently substantial to preclude summary judgment.[37]

3.  Independent Creation

---

[35] Harold Lloyd Corp. v. Witwer, 65 F.2d 1, 18 (9th Cir. 1933); 4 Melville B. Nimmer & David Nimmer, Nimmer on Copyright § 13.03[E][1][a], at 13-79 (2000).

[36] We note that a design is not to be confused with the "tangible medium of expression" in which it is embodied. See 17 U.S.C. §§ 102, 106.  Peel therefore is correct when it insists that quality differences between a handmade wool rug and a stenciled jute should not be considered when comparing the similarities or "aesthetic appeal" of the rugs' designs, distinct from the aesthetic appeal of the material and workmanship.

[37] See Leigh v. Warner Bros., Inc., 212 F.3d 1210, 1216 (11th Cir. 2000) (finding similarities significant enough to preclude summary judgment and noting that "'[s]ubstantial similarity'" is a question of fact, and summary judgment is only appropriate if no reasonable jury could differ in weighing the evidence").

14

Even if Peel establishes a prima facie case of copying, Rug Market still may rebut that case with evidence of independent creation. Rug Market did present some evidence of independent creation, but the district court concluded only that, "in light of the Tessoro's simplicity in design, use of bold geometric shapes, squares, triangles, and circular flowers, it is conceivable that Ambadi designed the Tessoro on its own accord." We do not view the evidence Rug Market presented as adequate to support a holding as a matter of law that the Tessoro was independently created; rather, a genuine question of material fact remains on this issue, which we also leave for the factfinder.[38]

## C. Attorneys' Fees

Rug Market's appeal of the district court's refusal to award attorneys' fees and costs is mooted by our remand of this case for trial on the merits.

## D. Motion to Strike Evidence

Rug Market did not brief this issue, noting only that it "adopts and incorporates by reference its argument below." Therefore, it has abandoned the issue on appeal.[39]

**III.**
**CONCLUSION**

---

[38] The district court did not explicitly address the striking similarity test, although it did discuss the inference of access in terms of substantial similarity. We express no opinion as to whether we might find the Tessoro strikingly similar to the Directoire.

[39] See Cinel v. Connick, 15 F.3d 1338, 1345 (5th Cir. 1994); Yohey v. Collins, 985 F.2d 222, 224-25 (5th Cir. 1993).

15

Peel has raised genuine issues of material fact regarding access to the Directoire by Rug Market and the degree of similarity between the two rugs at issue.  We therefore reverse the district court's summary judgment and remand for further proceedings consistent with this opinion.

REVERSED and REMANDED.