**United States Court of Appeals**
**Fifth Circuit**

**F I L E D**

**August 20, 2003**

Charles R. Fulbruge III
Clerk

IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

_____

No. 02-30992

_____

EMANATION INC
                    Plaintiff-Appellant

v.

ZOMBA RECORDING INC, doing business as Jive Records;
MICHAEL TYLER, also known as Mystikal
                    Defendants-Appellees

_____

Appeal from the United States District Court
for the Eastern District of Louisiana
(01-CV-3284)

_____

Before KING, Chief Judge, and DAVIS and BENAVIDES, Circuit
Judges.

PER CURIAM:[*]:

     This case calls upon us to examine the extent of copyright
protection for allegedly unique and original combinations of
certain words and phrases.  We agree with the district court that
the relevant words and phrases here are common Cajun identified
phrases not subject to copyright protection and thus affirm the
judgment in favor of the defendants.

**I.**

**FACTUAL AND PROCEDURAL HISTORY**

_____

     [*]     Pursuant to 5TH CIR. R. 47.5, the court has determined
that this opinion should not be published and is not precedent
except under the limited circumstances set forth in 5TH CIR. R.
47.5.4.

The facts of this case are undisputed. The plaintiff, Emanation, Inc. ("Emanation"), is a Louisiana corporation that designs, manufactures and distributes novelty items. In 1997, the president of Emanation, Steve Winn, created a novelty play-back device called "Cajun in Your Pocket" ("Pocket Device"). The Pocket Device is a hand-held toy. On its face, it bears six buttons which, when pushed, play the following spoken phrases (referred to by Emanation as "lyrics"): (1) "AIEEE"; (2) "We gon pass a good time, yeah, cher"; (3) "Oo, I love you like a pig loves corn"; (4) "You gotta suck da head on dem der crawfish"; (5) "Laissez les bons temps rouler"; and (6) "Oo, cher, look like you gotta Cajun in you pocket." At issue in this case are spoken phrases number two, "We gon pass a good time, yeah, cher," and four, "You gotta suck da head on dem der crawfish." Since 1997, Emanation has sold approximately 60,000 units of the Pocket Device. It continues to sell the Pocket Device today. On February 16, 1999, Emanation registered a copyright (#SR 261-398) to protect the "sound recording" of these six sayings.[2]

In the fall of 2000, nearly three years after the Pocket Device was marketed to the general public, defendant Zomba Recording Inc. d/b/a Jive Records ("Zomba") distributed an album recorded by Michael Tyler a/k/a Mystikal ("Mystikal"), a rap

---

[2] "Sound recordings" are "works that result from the fixation of a series of musical, spoken, or other sounds . . . ." Newton v. Diamond, 204 F. Supp. 2d 1244, 1249 (C.D. Cal. 2002) (quoting 17 U.S.C. § 101 (2000)). A sound recording differs from a musical composition, which captures an artist's music in its written form only. Id.

artist.  This album included the song entitled "Shake Ya Ass" (the "Song"), which admittedly included the exact word arrangements found in the two relevant Pocket Device sayings cited above.  It is estimated that the Song sold six million units worldwide.  It has also appeared in several movies and numerous CD compilations.

On December 13, 2000, Emanation received a copyright (# PA 1-034-708) for the word arrangements found in the Pocket Device sayings.

On October 31, 2001, Emanation filed suit against Zomba and Mystikal (collectively, the "defendants"), seeking damages for alleged copyright infringement of both of its copyrights and for unfair trade practices under the Lanham Act and state law.  The defendants thereafter moved for summary judgment on all claims.  In their motion for summary judgment, the defendants maintained that the two relevant sayings were common colloquial Cajun sayings not protected by copyright law and that, even assuming the sayings were subject to copyright protection, there is no "substantial similarity" between the two works.

On September 3, 2002, the district court granted summary judgment in favor of the defendants.  The district court also dismissed Emanation's Lanham Act claims and its state law claims of trademark infringement and unfair trade practices.  Final judgment in favor of the defendants was entered on September 5, 2002.

Emanation appeals from this final judgment only insofar as it dismissed Emanation's copyright infringement claim.[3]

## II.

### STANDARD OF REVIEW

We review <u>de novo</u> the district court's grant of summary judgment, using the same standard as did the district court. <u>Peel & Co., Inc. v. The Rug Mkt.</u>, 238 F.3d 391, 394 (5th Cir. 2001). Viewing the facts, and the inferences to be drawn from them, in the light most favorable to Emanation as the non-movant, the grant of summary judgment is proper only if no genuine fact issues persist as to Emanation's claim of copyright infringement. <u>Id.</u>

## III.

### COPYRIGHT INFRINGEMENT REQUIREMENTS

Emanation sued the defendants for copyright infringement under the Copyright Act of 1976. To establish copyright infringement, Emanation must demonstrate: (1) ownership of a valid copyright, and (2) unauthorized copying of constituent elements of its work that are original. <u>Harper & Row, Publishers, Inc. v. Nation Enter.</u>, 471 U.S. 539, 556 (1985).

The first requirement is not at issue here; the defendants concede that Emanation owns a valid copyright (#SR 261-398) protecting the "sound recording" of the six Pocket Device sayings and a valid copyright (#PA 1-034-708) protecting the word

---

[3] Emanation does not address the district court's dismissal of its Lanham act claims and state law claims of trademark infringement and unfair trade practices. We thus deem the appeal of the dismissal of these claims abandoned. <u>See</u> <u>Yohey v. Collins</u>, 985 F.2d 222, 224-25 (5th Cir. 1993).

4

arrangements in the six sayings used in the Pocket Device.[4]  We thus focus our inquiry on the second requirement – the unauthorized "copying of constituent elements of the work that are original." Feist Publ'n, Inc. v. Rural Tel. Serv. Co., 499 U.S. 340, 361 (1991).

This second requirement is comprised of numerous elements – each of which must be satisfied by Emanation.  First, Emanation must demonstrate that the sayings claimed to be protected are "original."  See, e.g., id. at 345.  Second, as direct evidence of "copying" is not available in this case, Emanation must satisfy the "copying" element by demonstrating "factual copying," which "can be inferred from (1) proof that the defendant[s] had access to the copyrighted work prior to creation of the infringing work and (2) probative similarity."  Peel & Co., 238 F.3d at 394.  Finally, assuming the "factual copying" element is satisfied, Emanation must further show that this copying was "unauthorized" or unlawful, meaning that the claim is legally actionable.  The "unauthorized" element is demonstrated through a "substantial similarity" test. See, e.g., id. at 395 ("Not all copying is legally actionable,

---

[4]     Emanation's copyrights cover all six sayings as one unit.  However, as we have previously held, this does not preclude a claim for copyright infringement of a single saying in this unit or, as here, two sayings.  See, e.g., Szabo v. Errisson, 68 F.3d 940, 943 (5th Cir. 1995) (holding that a "copyright of a collection of unpublished works protects the individual works that are copyrightable, regardless of whether they are individually listed on the copyright certificate"), citing with approval Heyman v. Salle, 743 F. Supp. 190, 193 (S.D.N.Y. 1989) (concluding that individual photographs in a copyrighted book were protected as both original works and as part of a copyrighted work).

5

however.  To prevail on a copyright infringement claim, a plaintiff also must show substantial similarity between the two works."); Alcatel USA, Inc. v. DGI Tech., Inc., 166 F.3d 772, 790 (5th Cir. 1999).

The defendants dispute Emanation's ability to satisfy the "originality" element, the "probative similarity" test, and the "substantial similarity" test, but concede that Mystikal had "access to the copyrighted work prior to creation" of the Song.[5]

## IV.

## ORIGINALITY

It is a generally accepted truth in copyright law that "[f]acts and discoveries, of course, are not themselves subject to copyright protection," Feist, 499 U.S. at 345 (internal quotation omitted), but that "compilations of facts are within the subject matter of copyright," and were indeed expressly mentioned in the Copyright Act of 1909, and again in the Copyright Act of 1976.  Id. In Feist, the Supreme Court cited the statutory and constitutional requirement of "originality" to explain the "doctrinal tension" between these two rules – that facts, on the one hand, do not receive copyright protection, but factual compilations, on the

---

[5]    The defendants also mention, in passing without a single case citation, the alleged applicability of the doctrine of copyright estoppel to this case.  However, because this argument was not identified in the issue section of the defendants' briefing or addressed in any meaningful manner in the defendants' briefing, it is deemed waived.  Ruiz v. United States, 160 F.3d 273, 275 (5th Cir. 1998).

other hand, generally do.[6]  Id.; see art. I, § 8, cl. 8; 17 U.S.C. § 102(a) (extending protection to "original works of authorship fixed in any tangible medium of expression").

The "original" element "does not require novelty, ingenuity, or aesthetic merit." Mason v. Montgomery Data, Inc., 967 F.2d 135, 141 (5th Cir. 1992). However, the simple recording or reporting of facts is insufficient to satisfy the "originality" requirement because "[t]he first person to find and report a particular fact has not created the fact; he or she has merely discovered its existence." Feist, 499 U.S. at 347. To qualify a work as an "original" work "choices as to selection and arrangement" of facts into factual compilations must be made such that the independent creation of the compilation involves "at least some minimal degree of creativity." Id. at 345 (quoting 1 M. NIMMER & D. NIMMER, COPYRIGHT § 2.01[A], [B] (1990) (hereinafter NIMMER)). For example, in Harper & Row Publishers, Inc., the Supreme Court explained that President Ford could not prevent others from copying bare historical facts from his autobiography but that he could prevent others from copying "subjective descriptions and portraits of public figures." 471 U.S. at 556-57, 563.

Here, the packaging of the Pocket Device states that the device plays "six authentic Cajun sayings."  On the back of the

---

[6]     The definition of "compilation" is found in § 101 of the 1976 Act, which defines a "compilation" in the copyright sense as "a work formed by the collection and assembling of preexisting materials or of data that are selected, coordinated, or arranged in such a way that the resulting work as a whole constitutes an original work of authorship."

7

package, the following "sayings & definitions" for the relevant

phrases are provided:

WE GON PASS A
GOOD TIME, YEAH, CHER

First of all, 'gon' is short for 'gonna' which means 'going to'. To 'pass a good time' means to have a good time. The use of the word 'pass' comes from the French verb 'passer' which means, oddly enough, 'to pass time' or 'to spend time'. 'Cher' is a term of endearment, like baby, honey or dear.

. . .

YOU GOTTA SUCK DA HEAD
ON DEM DER CRAWFISH

Yes, we do suck the head on the boiled crawfish in Louisiana. How else you gonna get all that flavor from the juice that's hiding up there. We also pinch the tails, but that's a whole 'nother story. (We often put the letter "d" in place of the letter "th" in words.)

Ex. 1.

The district court found that the two relevant sayings were

unprotected facts, not original factual compilations, stating:

Here, the Court finds that the phrases "We Gon Pass a Good Time, Yeah, Cher" and "You Gotta Suck Da Head of Dem Der Crawfish" do not satisfy the originality requirement of Feist. Some minimal degree of creativity is patently elusive. It is undeniable that these statements are merely common Cajun-identified phrases which are not subject to copyright protection. Defendants' expert, Amanda Lafleur, states, and plaintiff does not dispute, that the two phrases at issue are "well-known colloquial Cajun expressions and that their syntax is very predictable in the context of south Louisiana vernacular speech." She also points out that the "phrases have been uttered many times over the years in everyday conversation . . ." Moreover, plaintiff markets the product as containing "authentic Cajun sayings," acknowledging that sayings are not original in the critical sense of being creative.

Ord. at 4 (internal citation omitted). We agree.

8

In <u>Norma Ribbon & Trimming, Inc. v. Little</u>, 51 F.3d 45 (5th Cir. 1995), manufacturers of ribbon flowers (artificial flowers made of twisted ribbon that may be attached as decoration to clothing and accessories) counterclaimed against their former marketer for copyright infringement of their ribbon flowers. <u>Id.</u> at 46. Although the counter-plaintiffs tried to distinguish their ribbon flowers from those ribbon flowers already existing in the public domain by demonstrating that their flowers "[we]re of a higher quality, ha[d] greater symmetry and uniformity, and ha[d] different height and petal shape," we upheld the grant of summary judgment in favor of the marketer. <u>Id.</u> at 47-48. In so doing, we found that the counter-plaintiffs' ribbon flowers lacked the requisite originality for copyright protection, stating that "[a]lthough prior to the new process [used by the counter-plaintiffs] it may have been difficult to manufacture ribbon flowers of consistently high quality, there [i]s nothing new in the design of the flowers themselves." <u>Id.</u> at 48.

As in <u>Norma Ribbon & Trimming</u>, the slight modifications to the common Cajun words and phrases made by Winn are "merely trivial" and do not allow Emanation to satisfy the originality requirement. <u>Id.</u> at 47. For example, in his deposition, Wynn testifies that with respect to the "we gon pass a good time, yeah, cher," that "pass a good time" and "cher" are common Cajun sayings, but states that his arrangement of the words "we gon pass a good time, yeah, cher," with the syntax, inflection, and cadence ultimately selected for the recording is unique. However, we hold that no reasonable

9

juror could conclude that this saying should be afforded copyright protection as an "original" work simply because Wynn added the word "yeah" between two common phrases and recorded the saying in typical Cajun dialect.  We likewise hold that, with respect to the phrase "you gotta suck da head on dat der crawfish," no reasonable juror could conclude that this saying should be afforded copyright protection as an "original" work simply because Wynn made minor alterations to admittedly common phrases, such as "you gotta suck the head."  See, e.g., Narell v. Freeman, 827 F.2d 907, 911-12 (9th Cir. 1989) (denying protection to commonly-used expressions found in an historical work, such as "staggering network," "cow path," or the description of a river bank as "crawling with alligators"); Alberto-Culver Co. v. Andrea Dumon, Inc., 466 F.2d 705, 711 (7th Cir. 1972) (denying protection to the phrase "most personal sort of deodorant"); Jean v. Bug Music, Inc., 2002 WL 287786, at *6 (S.D.N.Y. 2002) ("[A] reasonable jury could only conclude that the lyrical excerpt 'clap your hands' is not afforded copyright protection because the excerpt is a common phrase.  The lyrics appear often in church anthems and secular music.").

Because we agree with the district court that Emanation cannot satisfy the "originality" requirement, we need not address the "probative similarity" or "substantial similarity" tests.

**V.**

**CONCLUSION**

We AFFIRM the final judgment of the district court.

10