**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

L.A. PRINTEX INDUSTRIES, INC., a
California Corporation,
*Plaintiff-counter-defendant-*
*Appellant,*

v.

AEROPOSTALE, INC., a New York
Corporation; MS. BUBBLES, INC., a
California Corporation,
*Defendants-Appellees.*

No. 10-56187

D.C. No.
2:09-cv-02449-JFW-
FMO

ORDER AND
AMENDED
OPINION

Appeal from the United States District Court
for the Central District of California
John F. Walter, District Judge, Presiding

Argued and Submitted
December 5, 2011—Pasadena, California

Filed April 9, 2012
Amended June 13, 2012

Before: Dorothy W. Nelson, Ronald M. Gould, and
Sandra S. Ikuta, Circuit Judges.

Opinion by Judge Gould

6737

**COUNSEL**

Scott A. Burroughs (argued), Stephen Doniger, and Regina Y. Yeh, Doniger / Burroughs APC, Culver City, California, for the plaintiff-appellant.

Deborah F. Sirias (argued) and Robert M. Collins, Lewis Brisbois Bisgaard & Smith LLP, Los Angeles, California; Jeffrey A. Miller, Lewis Brisbois Bisgaard & Smith LLP, San Diego, California; Kristin L. Holland, Cory A. Baskin, and Zia F. Moddabber, Katten Muchin Rosenman LLP, Los Angeles, California; and Jay Shapiro, Katten Muchin Rosenman LLP, New York, New York, for the defendants-appellees.

**ORDER**

The opinion in the above-captioned matter filed on April 9, 2012, and published at 676 F.3d 841, is amended as follows:

At slip opinion page 3795, lines 19-22, change <There is no evidence that L.A. Printex knew that the two designs had been published at the time it submitted its application for copyright registration, or that it intended to defraud the Copy-

right Office.> to <The record, when viewed in the light most favorable to L.A. Printex, does not demonstrate that L.A. Printex knowingly included previously published designs in its application for copyright registration such that the error was other than an inadvertent mistake, or that L.A. Printex intended to defraud the Copyright Office.>.

The panel has voted to deny the petition for panel rehearing. Judges Gould and Ikuta have voted to deny the petition for rehearing en banc, and Judge Nelson has so recommended. The full court has been advised of the petition for rehearing en banc and no judge has requested a vote on whether to rehear the matter en banc. Fed. R. App. P. 35. The petition for panel rehearing and rehearing en banc is denied.

No future petitions for rehearing or rehearing en banc will be entertained.

**IT IS SO ORDERED.**

---

## OPINION

GOULD, Circuit Judge:

L.A. Printex Industries, Inc. ("L.A. Printex") appeals the district court's summary judgment order in favor of Aeropostale, Inc. and Ms. Bubbles, Inc. ("Defandants") in L.A. Printex's copyright infringement action. Because there are genuine disputes of material fact on access and substantial similarity, we reverse and remand.

## I

L.A. Printex Industries, Inc. ("L.A. Printex") is a Los Angeles-based fabric printing company. Ms. Bubbles is a Los Angeles-based wholesaler of men and women's apparel.

Aeropostale is a mall-based retailer that purchases apparel from Ms. Bubbles and other vendors.

In 2002, Moon Choi, an L.A. Printex designer, created a floral design called C30020. Choi created this design by hand, using a computer. On July 17, 2002, the Copyright Office issued a certificate of registration for Small Flower Group A, a group of five textile designs that includes C30020. Small Flower Group A is registered as a single unpublished collection pursuant to 37 C.F.R. § 202.3(b)(4)(i)(B).

Between October of 2002 and May of 2006, L.A. Printex sold more than 50,000 yards of fabric bearing C30020 to its customers, who are fabric converters. Fabric converters show apparel manufacturers textile designs, obtain orders for selected designs, place orders for the designs with printing mills like L.A. Printex, and send printed fabric to manufacturers that then manufacture apparel for sale to retailers.

In 2008, L.A. Printex discovered shirts bearing the Aeropostale trademark and a design similar to C30020. According to Jae Nah, the President of L.A. Printex, the only difference between C30020 and the design on the Aeropostale shirts is that the latter was "printed using cruder, lower-quality techniques and machinery." Aeropostale placed orders with Ms. Bubbles for the shirts in June of 2006, and it offered for sale and sold the shirts between September and December of 2006. The tags on the shirts say "Made in China." Ms. Bubbles, however, stated that it had no understanding or information about the party that created the design resembling C30020.

On April 8, 2009, L.A. Printex sued Defendants for infringement of its copyright in C30020. After bringing this infringement action, L.A. Printex became aware that its copyright registration for Small Flower Group A contained an error. Two of the five designs, but not C30020, had been published before the July 17, 2002 date of registration. On Febru-

ary 22, 2010, L.A. Printex filed an application for supplementary registration to add April 1, 2002 as the date of first publication for Small Flower Group A. L.A. Printex thereafter contacted the Copyright Office to ask about its registration of a single unpublished work that contained both published and unpublished designs. The Copyright Office told L.A. Printex that the unpublished designs, including C30020, would retain copyright protection but that the previously published designs would not. On May 10, 2010, L.A. Printex filed a second application for supplementary registration to remove the two previously published designs from Small Flower Group A. On June 29, 2010, the Copyright Office approved L.A. Printex's application and issued a certificate of supplementary registration for Small Flower Group A; it states February 25, 2010 as the effective date of supplementary registration.

L.A. Printex and Defendants filed cross-motions for summary judgment. The district court granted Defendants' motion for summary judgment and denied L.A. Printex's motion, holding that there was no genuine issue of material fact as to (1) Defendants' access to C30020 or (2) substantial similarity between the allegedly infringing design on the Aeropostale shirts and C30020. The district court did not address Defendants' alternative argument that L.A. Printex's copyright registration was invalid because of the two previously published designs that were initially included in Small Flower Group A. Defendants then moved for attorneys' fees, and the district court granted their motion. L.A. Printex timely appealed to this court.

## II

We have jurisdiction under 28 U.S.C. § 1291. We review the district court's grant of summary judgment de novo. *Ellison v. Robertson*, 357 F.3d 1072, 1075 (9th Cir. 2004). Summary judgment is appropriate if, viewing the evidence in the light most favorable to the nonmoving party, "there is no gen-

uine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Ellison*, 357 F.3d at 1075. A genuine dispute is "one that could reasonably be resolved in favor of either party." *See Ellison*, 357 F.3d at 1075.

## III

**[1]** To establish copyright infringement, a plaintiff must prove two elements: "(1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original." *Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 361 (1991).

The district court granted summary judgment for Defendants because it concluded that there was no genuine issue of material fact as to the second element, Defendants' copying of original elements of C30020.

**[2]** "Because direct evidence of copying is not available in most cases," a plaintiff can establish copying by showing (1) that the defendant had access to the plaintiff's work and (2) that the two works are substantially similar. *Smith v. Jackson*, 84 F.3d 1213, 1218 (9th Cir. 1996). L.A. Printex offered no direct evidence that Defendants copied C30020. To survive summary judgment, it had to show a genuine issue of material fact as to both access and substantial similarity. L.A. Printex contends that the district court erred in holding that there was no genuine issue as to either access or substantial similarity. We agree.

## A

**[3]** "Proof of access requires 'an opportunity to view or to copy plaintiff's work.' " *Three Boys Music Corp. v. Bolton*, 212 F.3d 477, 482 (9th Cir. 2000) (quoting *Sid & Marty Krofft Television Prods., Inc. v. McDonald's Corp.*, 562 F.2d 1157, 1172 (9th Cir. 1977)). "To prove access, a plaintiff

must show a reasonable possibility, not merely a bare possibility, that an alleged infringer had the chance to view the protected work." *Art Attacks Ink, LLC v. MGA Entm't Inc.*, 581 F.3d 1138, 1143 (9th Cir. 2009). Absent direct evidence of access, a plaintiff can prove access using circumstantial evidence of either (1) a "chain of events" linking the plaintiff's work and the defendant's access, or (2) "widespread dissemination" of the plaintiff's work. *Three Boys Music*, 212 F.3d at 482.

L.A. Printex seeks to prove access by showing that C30020 was widely disseminated. The district court held that there was no genuine issue of material fact as to Defendants' access because, it found, "the only evidence of widespread dissemination" was Jae Nah's declaration stating that L.A. Printex first sold C30020 in October of 2002 and that L.A. Printex "produced and sold thousands of yards of fabric bearing [Design Number C30020] to numerous customers from 2002-2008." The district court concluded that "such vague and conclusory statements certainly create no more than a 'bare possibility' that Defendants may have had access to Plaintiff's Design Number C30020" and that a "bare possibility" is insufficient to create a genuine issue on access.

However, Nah's declaration statements were not the only evidence of widespread dissemination. The record also contained a printout, attached as an exhibit to Nah's declaration, entitled "Sales by Item Detail" for the period from January 1, 2002 through August 12, 2009. The printout is a list of invoices for C30020 and shows, for each invoice, the date, invoice number, brief description, customer name, quantity, and dollar amount. Only fabric sold before Defendants' alleged infringement is relevant. The sales records show that L.A. Printex sold more than 50,000 yards of C30020 through May of 2006, before Aeropostale's June orders for the allegedly infringing shirts.[1]

---

[1]Defendants object to the sales printout's admissibility as a business record and argue that L.A. Printex's differing characterizations of the

**[4]** We must decide whether L.A. Printex's sale of more than 50,000 yards of fabric bearing C30020 creates a genuine dispute of material fact as to whether C30020 was widely disseminated. We conclude that it does.

The evidence required to show widespread dissemination will vary from case to case. In *Three Boys Music Corp. v. Bolton*, the plaintiffs argued that their song—one that did not "even make the top 100 for a single week" and was not released on an album or CD before the defendants created their allegedly infringing song—had been widely disseminated during the defendants' teenage years. 212 F.3d at 483. They offered the testimony of three disc jockeys regarding the song's airtime on radio and television. *Id.* We upheld the jury's finding of access "[d]espite the weaknesses of the [plaintiffs'] theory of reasonable access" but indicated that we "might not [have] reach[ed] the same conclusion as the jury regarding access." *Id.* at 484-85. In *Rice v. Fox Broadcasting Co.*, we stated that because the plaintiff's video "only sold approximately 17,000 copies between 1986 and 1999," it could not be considered "widely disseminated." 330 F.3d 1170, 1178 (9th Cir. 2003). In *Art Attacks Ink, LLC v. MGA Entertainment, Inc.*, we held that the plaintiff had not widely disseminated its T-shirt designs, even though the designs were displayed (1) at fair booths and kiosks, (2) on persons wearing the T-shirts, and (3) on the internet. 581 F.3d at 1144. Noting, among other things, that the plaintiff sold only 2,000 T-shirts bearing the designs per year, we held, "A reasonable jury could not have concluded that there was more than a 'bare possibility' that [the defendant] had access to [the plaintiff]'s

---

quantity of yards sold make the document untrustworthy. The district court stated that it had either overruled or not ruled on the parties' objections to evidence. Viewing the sales printout in the light most favorable to L.A. Printex, we may consider it as part of the district court record. The numbers speak for themselves, and if credited, show sales of more than 50,000 yards.

. . . designs," and affirmed the district court's grant of summary judgment for the defendant. *Id.* at 1144-45.

**[5]** The circumstances here differ from those of our prior cases, and so those cases, though instructive, are not dispositive. In *Rice*, the dissemination occurred worldwide, over a thirteen-year period. 330 F.3d at 1173. In *Art Attacks Ink*, the respective parties sold different goods, T-shirts and dolls. 581 F.3d at 1142. In contrast, L.A. Printex and Ms. Bubbles operate in the same industry in the same Los Angeles area. L.A. Printex, a fabric printing company, sold more than 50,000 yards of fabric bearing C30020 to fabric converters. It is a reasonable inference that many or most of these purchasers were in the Los Angeles area. Apparel vendors like Ms. Bubbles purchase fabric from fabric printing companies and fabric converters. In addition, the dissemination of C30020 occurred over a four-year period immediately preceding Defendants' alleged infringement. A reasonable jury could find that C30020 was widely disseminated in the Los Angeles-area fabric industry, and hence that there was a "reasonable possibility" that Defendants had an opportunity to view and copy L.A. Printex's design. *See Art Attacks Ink*, 581 F.3d at 1143; *Three Boys Music*, 212 F.3d at 482; *see also Peel & Co. v. Rug Mkt.*, 238 F.3d 391, 397 (5th Cir. 2001) (holding that plaintiff rug wholesaler had raised genuine issue as to whether its designer rug "was widely disseminated among those involved in the United States rug trade"). We hold that L.A. Printex raised a genuine dispute of material fact on access.

**B**

To determine whether two works are substantially similar, we apply a two-part test. *Smith*, 84 F.3d at 1218. The "extrinsic test" is an "objective comparison of specific expressive elements"; it focuses on the "articulable similarities" between the two works. *Cavalier v. Random House, Inc.*, 297 F.3d 815, 822 (9th Cir. 2002) (quoting *Krofft*, 562 F.2d at 1164). The "intrinsic test" is a subjective comparison that focuses on

" 'whether the ordinary, reasonable audience' would find the works substantially similar in the 'total concept and feel of the works.' " *Id.* (quoting *Kouf v. Walt Disney Pictures & Television*, 16 F.3d 1042, 1045 (9th Cir. 1994)).

Summary judgment is "not highly favored" on questions of substantial similarity in copyright cases. *Shaw v. Lindheim*, 919 F.2d 1353, 1355 (9th Cir. 1990) (quoting *Narell v. Freeman*, 872 F.2d 907, 909 (9th Cir. 1989)). Summary judgment is appropriate "if the court can conclude, after viewing the evidence and drawing inferences in a manner most favorable to the non-moving party, that no reasonable juror could find substantial similarity of ideas and expression." *Id.* (quoting *Narell*, 872 F.2d at 909-10). "Where reasonable minds could differ on the issue of substantial similarity, however, summary judgment is improper." *Id.*

The district court compared the copy of C30020 that L.A. Printex deposited with the Copyright Office to Defendants' allegedly infringing shirts and concluded that "no reasonable juror could find that the two works are substantially similar." The district court reasoned that the "observable similarities" between the designs were "of a surface nature only," in that "both designs represent small-scale overall floral patterns of approximately the same size." The district court then stressed "several critical differences" between the designs: (1) the flowers, stems, and leaves on C30020 are "far more detailed" than those on the allegedly infringing shirts, "which have softer edges and are more impressionistic in appearance"; (2) on C30020, "multiple shades of one color are used to give the flowers their definition and sharper edges, while multiple shades of green are used to give the leaves and stems their definition and clean lines," but on the allegedly infringing shirts, by contrast, "the flowers are of one uniform color, with the leaves and stem a single shade of green"; (3) C30020 "contains an overall background pattern of almost lace-like flowers that is completely lacking" on the allegedly infringing shirts; and (4) the groupings of flowers, stems, and leaves

within a vertical row are "spaced much farther apart" on C30020 than on the allegedly infringing shirts.

Notwithstanding these observations by the district court, our comparison of C30020 and Defendants' allegedly infringing design leads us to conclude that a reasonable juror could find that the two designs are substantially similar.

First, we apply the extrinsic test. Because copyright law protects expression of ideas, not ideas themselves, we distinguish protectible from unprotectible elements and ask only whether the protectible elements in two works are substantially similar. *See Cavalier*, 297 F.3d at 822. In comparing fabric designs, we examine the similarities in their "objective details in appearance," including, but not limited to, "the subject matter, shapes, colors, materials, and arrangement of the representations." *See id.* at 826 (comparing "art works").

**[6]** Original selection, coordination, and arrangement of unprotectible elements may be protectible expression. *See Feist Publ'ns*, 499 U.S. at 362; *Cavalier*, 297 F.3d at 826-27; *Metcalf v. Bochco*, 294 F.3d 1069, 1074 (9th Cir. 2002) ("Each note in a scale, for example, is not protectable, but a pattern of notes in a tune may earn copyright protection."). For this reason, the Second Circuit has rejected the argument that, "in comparing [fabric] designs for copyright infringement," a court must "dissect them into their separate components, and compare only those elements which are in themselves copyrightable." *Knitwaves, Inc. v. Lollytogs Ltd.*, 71 F.3d 996, 1003 (2d Cir. 1995) ("[I]f we took this argument to its logical conclusion, we might have to decide that there can be no originality in a painting because all colors of paint have been used somewhere in the past." (internal quotation marks omitted)). In *Knitwaves, Inc. v. Lollytogs Ltd.*, the court concluded that the defendant's "Leaf and Squirrel sweaters" were substantially similar to the plaintiff's sweaters, citing, among other things, the defendant's selection of "the same two fall symbols," leaves and squirrels, and its arrangement

of the symbols "as felt appliques stitched to the sweaters' surface," "on strikingly similar backgrounds," and "in virtually the same color scheme." *Id.* at 1004. Similarly, in *Hamil America, Inc. v. GFI*, the Second Circuit held that the defendant's and plaintiff's floral patterns were substantially similar because "GFI ha[d] duplicated Hamil America's selection of clustered flowers and leaves, its coordination of these elements in particular spatial combinations, and its arrangement of these design elements on a tossed pattern that appears in repeat." 193 F.3d 92, 103 (2d Cir. 1999). More specifically:

> Both patterns depict small clusters of flowers and leaves. The shapes of the flower petals and the leaves are virtually identical, and feature similar defining line work and highlights in the flowers and leaves. Both patterns depict leaves that do not appear to be attached to any of the flowers. Both patterns are "tossed," which means that they have no top or bottom and are non-directional, and appear in repeat.

*Id.* at 102.

[7] Though the Second Circuit's "ordinary observer" and "more discerning ordinary observer" tests differ somewhat from our two-part extrinsic/intrinsic test for substantial similarity,[2] its reasoning, at least in the context of fabric designs, is persuasive, and it guides our comparison of the designs in this case.

[8] C30020 is a repeating pattern of bouquets of flowers and three-leaf branches.[3] The idea of a floral pattern depicting

---

[2]*See Knitwaves*, 71 F.3d at 1002-03; *Folio Impressions, Inc. v. Byer California*, 937 F.2d 759, 766 (2d Cir. 1991).

[3]We compare Defendants' design to the deposit copy of C30020. Because we conclude that a rational jury could find that the two designs are substantially similar, it is not necessary for us to analyze the similarities between Defendants' design and fabric swatches of C30020. But on

bouquets and branches is not protectible, and C30020 has elements that are not protectible, for example the combination of open flowers and closed buds in a single bouquet or the green color of stems and leaves. *See Satava v. Lowry*, 323 F.3d 805, 811 (9th Cir. 2003).[4] However, L.A. Printex's original selection, coordination, and arrangement of such elements is pro-

remand, the district court—and the jury—may consider fabric swatches of C30020 in applying our two-part test for substantial similarity, so long as the district court determines that the digital prints that L.A. Printex deposited with the Copyright Office constitute "one complete copy" of C30020, and that the fabric swatches are also "copies" of C30020. *See* 17 U.S.C. § 101 (defining copies as "material objects, other than phonorecords, in which a work is fixed by any method now known or later developed, and from which the work can be perceived, reproduced, or otherwise communicated, either directly or with the aid of a machine or device"); *id.* § 113(a) ("[T]he exclusive right to reproduce a copyrighted pictorial, graphic, or sculptural work in copies under section 106 includes the right to reproduce the work in or on any kind of article, whether useful or otherwise."); *id.* § 408(b)(1) (requiring deposit of "one complete copy" for registration); *Three Boys Music*, 212 F.3d at 486 (stating that "our definition of a 'complete copy' is broad and deferential").

[4]In *Satava*, we held that "ideas, first expressed by nature, are the common heritage of humankind, and no artist may use copyright law to prevent others from depicting them." 323 F.3d at 812. Here too, we stress that we will not give copyright protection to ideas recurring in nature, such as flowers with brightly colored petals, stems, and buds, because brightly colored flowers exist in nature. Unlike Satava's jellyfish sculptures, however, C30020 is "stylized and not lifelike," and depicts not flowers as they appear in nature but an artistic combination of floral elements that is sufficiently original to merit copyright protection. *See Hamil Am.*, 193 F.3d at 101. What we held in *Satava* about "the common heritage of humankind" is reinforced by the Supreme Court's recent decision in *Mayo Collaborative Services v. Prometheus Laboratories, Inc.*, holding that laws of nature are not patentable but that an application of a law of nature may merit patent protection if it "contain[s] other elements or a combination of elements . . . sufficient to ensure that the patent in practice amounts to significantly more than a patent upon the natural law itself." ___ S. Ct. ___, No. 10-1150, 2012 WL 912952, at *4-5 (Mar. 20, 2012). We commend the general proposition that our laws of intellectual property do not give strong protection to one who merely copies or recites what nature has provided.

tectible. *See Feist Publ'ns*, 499 U.S. at 362; *Metcalf*, 294 F.3d at 1074. Because there is "a wide range of expression" for selecting, coordinating, and arranging floral elements in stylized fabric designs, "copyright protection is 'broad' and a work will infringe if it's 'substantially similar' to the copyrighted work." *Mattel, Inc. v. MGA Entm't, Inc.*, 616 F.3d 904, 913-14 (9th Cir. 2010). That is, "there are gazillions of ways" to combine petals, buds, stems, leaves, and colors in floral designs on fabric, in contrast to the limited number of ways to, for example, "paint a red bouncy ball on black canvas" or make a lifelike glass-in-glass jellyfish sculpture. *See id.*; *Satava*, 323 F.3d at 812.

**[9]** Our comparison of Defendants' allegedly infringing design and C30020 reveals objective similarities in protectible elements. Both patterns feature two types of small bouquets of flowers, one featuring the largest flower in profile view, the other featuring the largest flower in an open-face view, and both emerging from three buds. Both patterns also depict small, three-leaf branches interspersed between the two types of bouquets. The shape and number of the flower petals and leaves are similar in the two designs. *See Hamil Am.*, 193 F.3d at 102. The two types of bouquets are arranged at similar angles in both designs, and the bouquets and branches are coordinated in similar spatial combinations on a grid of similar scale and layout. *See id.* at 103.

**[10]** Moreover, the color arrangement of C30020 in white/berry is markedly similar to the color arrangement of Defendants' design. Though mere variations of color are not copyrightable, and L.A. Printex's copyright in C30020 is for the design rather than a specific color arrangement, the similarities in color arrangements are probative of copying. *See* 37 C.F.R. § 202.1(a); *Soptra Fabrics Corp. v. Stafford Knitting Mills, Inc.*, 490 F.2d 1092, 1094 (2d Cir. 1974) ("The appearance in one of defendant's fabrics of colors identical to plaintiff's is additional evidence of actual copying, as well as another factor leading to the conclusion that the aesthetic

appeal of the fabrics is the same." (internal quotation marks, citation, and alteration omitted)); 1 Melville B. Nimmer & David Nimmer, Nimmer on Copyright § 2.14 (Matthew Bender rev. ed. 2011) ("[S]imilarity of color arrangements may create an inference of copying of other protectible subject matter.").

The differences noted by the district court do not compel the conclusion that no reasonable juror could find that Defendants' design is substantially similar to C30020. Rather, in light of the similarities described above, the differences support the opposite conclusion, that there is a genuine dispute of material fact on substantial similarity. *See* 4 Nimmer on Copyright § 13.03[B][1][a] ("It is entirely immaterial that, in many respects, plaintiff's and defendant's works are dissimilar, if in other respects, similarity as to a substantial element of plaintiff's work can be shown.").

It is true that the flowers, stems, and leaves in Defendants' design are less detailed than those in C30020, and that Defendants' design does not use multiple shades of color to give the flowers and leaves definition as does C30020. But a rational jury could find that these differences result from the fabric-printing process generally and are "inconsequential," *see F.W. Woolworth Co. v. Contemporary Arts, Inc.*, 193 F.2d 162, 165 (1st Cir. 1951), or could credit Jae Nah's assertion that these differences result in part from "print[ing] using cruder, lower-quality techniques and machinery," *cf. Peel & Co.*, 238 F.3d at 397-98 (finding genuine issue of material fact on substantial similarity where plaintiff claimed that differences between two rugs were "relatively small" and "consistent with short-cuts taken to make a cheap copy"). Moreover, because we conclude that stylized fabric designs like C30020 are properly entitled to "broad" copyright protection, it is not necessary that Defendants' design be "virtually identical" to infringe. *See Mattel*, 616 F.3d at 914.

[11] In granting summary judgment for Defendants, the district court also reasoned that Defendants' design lacks the

background pattern in C30020 and that the groupings of flowers, stems, and leaves are spaced farther apart in C30020 than in Defendants' design. But a copyright defendant need not copy a plaintiff's work in its entirety to infringe that work. It is enough that the defendant appropriated a substantial portion of the plaintiff's work. *See Newton v. Diamond*, 388 F.3d 1189, 1195 (9th Cir. 2004); *Cavalier*, 297 F.3d at 825; *cf. Sheldon v. Metro-Goldwyn Pictures Corp.*, 81 F.2d 49, 56 (2d Cir. 1936) (Hand, J.) ("[I]t is enough that substantial parts were lifted; no plagiarist can excuse the wrong by showing how much of his work he did not pirate."). A rational jury could find that despite some differences between Defendants' design and C30020, the similarities in the selection, coordination, and arrangement of bouquets and three-leaf branches are sufficiently substantial to support an inference of copying. Accordingly, we hold that objective similarities in the expressive elements of Defendants' design and C30020 present a genuine dispute of material fact under the extrinsic test.

[12] At the intrinsic stage, "we ask, most often of juries, whether an ordinary reasonable observer would consider the copyrighted and challenged works substantially similar." *Mattel*, 616 F.3d at 914. But on a summary judgment motion, a court's attempt to apply this subjective and fact-oriented standard, bypassing decision by the trier of fact, is not correct. *See, e.g.*, *Shaw*, 919 F.2d at 1359 (holding that in copyright action involving literary works, satisfaction of extrinsic test is sufficient to survive summary judgment on issue of substantial similarity).[5] As our precedent has evolved, the extrinsic test considers the objective expressive similarities in two works and leaves the subjective evaluation of such similarities to the intrinsic test. *Apple Computer, Inc. v. Microsoft Corp.*, 35 F.3d 1435, 1142 (9th Cir. 1994). A subjective evaluation of the expressive similarities in two fabric designs, here

---

[5]In *Cavalier*, we left open the question whether the "*Shaw* rule" applies to art work. 297 F.3d at 826. Our decision today suggests that at least on the facts here presented, it does.

intended for public consumption as clothing apparel, is best suited for the trier of fact. Thus, in light of our conclusion that the competing designs present a triable issue of fact under the extrinsic test, on the facts here involving stylized floral fabric designs, the issue of substantial similarity must go to the jury.

**IV**

Defendants contend that even if the district court erred in concluding that there was no genuine dispute of material fact on access or substantial similarity, summary judgement was proper on the alternative ground that L.A. Printex's copyright registration in C30020 is invalid. We may affirm a grant of summary judgment "on any grounds supported by the record." *Lamps Plus, Inc. v. Seattle Lighting Fixture Co.*, 345 F.3d 1140, 1143 (9th Cir. 2003). But the record does not show that L.A. Printex's copyright registration is invalid. Defendants are not entitled to summary judgment on this alternative ground.

Copyright registration is a precondition to filing a copyright infringement action. 17 U.S.C. § 411(a); *Reed Elsevier, Inc. v. Muchnick*, 130 S. Ct. 1237, 1241 (2010). "A certificate of registration satisfies the [registration requirement], regardless of whether the certificate contains any inaccurate information," unless (1) "the inaccurate information was included on the application for copyright registration with knowledge that it was inaccurate," and (2) "the inaccuracy of the information, if known, would have caused the Register of Copyrights to refuse registration." 17 U.S.C. § 411(b)(1). Thus we have held that "inadvertent mistakes on registration certificates do not invalidate a copyright and thus do not bar infringement actions, unless the alleged infringer has relied to its detriment on the mistake, or the claimant intended to defraud the Copyright Office by making the misstatement." *Urantia Found. v. Maaherra*, 114 F.3d 955, 963 (9th Cir. 1997); *see also, e.g.*, *Jules Jordan Video, Inc. v. 144942 Canada, Inc.*, 617 F.3d 1146, 1156 (9th Cir. 2010); *Lamps Plus*, 345 F.3d at 1145; 2

Nimmer on Copyright § 7.20[B][1] ("[A] misstatement or clerical error in the registration application, if unaccompanied by fraud, should neither invalidate the copyright nor render the registration certificate incapable of supporting an infringement action.").

A copyright owner may file an application for supplementary registration "to correct an error in a copyright registration or to amplify the information given in a registration." 17 U.S.C. § 408(d); 37 C.F.R. § 201.5. "The information contained in a supplementary registration augments but does not supersede that contained in the earlier registration," 17 U.S.C. § 408(d), and the earlier registration is not "expunged or cancelled," 37 C.F.R. § 201.5(d)(2).

The Copyright Act permits the registration of multiple works as a single work. 17 U.S.C. § 408(c)(1). For purposes of registration as a single work, copyright regulations distinguish between published works and unpublished works. *See* 37 C.F.R. § 202.3(b)(4)(i). A published collection of works must be "sold, distributed or offered for sale concurrently." *United Fabrics Int'l, Inc. v. C&J Wear, Inc.*, 630 F.3d 1255, 1259 (9th Cir. 2011). For unpublished works, "there is no such requirement." *Id.* A group of unpublished works may be registered as a single work if it consists of "all copyrightable elements that are otherwise recognizable as self-contained works, and are combined in a single unpublished 'collection.' " 37 C.F.R. § 202.3(b)(4)(i)(B).[6]

---

[6]A combination of such elements is considered a "collection" if:

> (1) The elements are assembled in an orderly form;

> (2) The combined elements bear a single title identifying the collection as a whole;

> (3) The copyright claimant in all of the elements, and in the collection as a whole, is the same; and

> (4) All of the elements are by the same author, or, if they are by different authors, at least one of the authors has contributed copyrightable authorship to each element.

Defendants argue that L.A. Printex's copyright registration is invalid because Small Flower Group A was registered as an unpublished collection but included two designs that were published before the work was registered. L.A. Printex argues that its erroneous inclusion of the two previously published designs in Small Flower Group A does not invalidate its registration because it did not intend to defraud the Copyright Office and because the Copyright Office allowed L.A. Printex to correct the error in its earlier registration through a supplementary registration. We agree with L.A. Printex.

**[13]** The July 2002 certificate of registration for Small Flower Group A contained an error—the inclusion of two previously published designs in a work registered as an unpublished collection. But that error in itself does not invalidate the registration or render the certificate of registration incapable of supporting an infringement action. 17 U.S.C. § 411(b); *Lamps Plus*, 345 F.3d at 1145; 2 Nimmer on Copyright § 7.20[B][1]. The record, when viewed in the light most favorable to L.A. Printex, does not demonstrate that L.A. Printex knowingly included previously published designs in its application for copyright registration such that the error was other than an inadvertent mistake, or that L.A. Printex intended to defraud the Copyright Office. *See* 17 U.S.C. § 411(b)(1)(A); *Lamps Plus*, 345 F.3d at 1145. Upon learning of its registration error, L.A. Printex corrected it. It filed an application for supplementary registration, communicated with the Copyright Office about the error through email and phone correspondence, and filed a second application for supplementary registration. Moreover, the Copyright Office issued a certificate of supplementary registration. Its decision to do so after it was told of the two designs' prior publication

----

Registration of an unpublished "collection" extends to each copyrightable element in the collection and to the authorship, if any, involved in selecting and assembling the collection.

37 C.F.R. § 202.3(b)(4)(i).

shows that the error was not one that "if known, would have caused the Register of Copyrights to refuse registration." 17 U.S.C. § 411(b)(1)(B). L.A. Printex's registration error does not bar its action against Defendants for infringement of its copyright in C30020.

**V**

We **REVERSE** the district court's grant of summary judgment, **VACATE** the award of attorneys' fees, and **REMAND** for further proceedings consistent with this opinion.