In the

# United States Court of Appeals
## For the Seventh Circuit

No. 12-3204

QUINCY NERI,

*Plaintiff-Appellant,*

*v.*

MELINDA MONROE, *et al.*,

*Defendants-Appellees.*

Appeal from the United States District Court
for the Western District of Wisconsin.
No. 11-cv-429-slc — **Stephen L. Crocker**, *Magistrate Judge.*

ARGUED JANUARY 25, 2013 — DECIDED AUGUST 12, 2013

Before EASTERBROOK, *Chief Judge*, and BAUER and KANNE, *Circuit Judges*.

EASTERBROOK, *Chief Judge*. Quincy Neri designed a glass sculpture that Architectural Building Arts installed in the ceiling of the entrance hallway at Linda Hughes's condominium in Madison, Wisconsin. As part of its renovation of Hughes's whole residence, Architectural Building Arts removed the foyer's dome (which had been decorated with a

mural) and installed a vaulted ceiling to which the sculpture was attached. Leslie Sager designed the lighting for the revised entryway. With Hughes's consent, Eric Ferguson took before, during, and after photographs of the project; two of these include the sculpture. Architectural Building Arts put copies of the photos on its web site and included them in a newsletter and an application for an architectural award. Sager posted them on her own web site, while Ferguson posted them to his Flickr page. Architectural Building Arts, Sager, and Ferguson all sought to exemplify the skills they had contributed.

This lawsuit has been their reward. Neri contends that Architectural Building Arts (plus Melinda Monroe and Steve Larson, its owners), Sager, and Ferguson violated her copyright in the sculpture, which she calls "Mendota Reflection." A magistrate judge, presiding by consent under 28 U.S.C. §636(c), dismissed the suit on the ground that Neri lacks a registration of her copyright. Although a copyright exists automatically as soon as a work is fixed in a tangible medium, 17 U.S.C. §102(a), litigation to enforce a copyright is permissible only after it has been registered. 17 U.S.C. §411(a). Neri submitted for registration a collection of photographs of her unpublished works, including Mendota Reflection, and the Register of Copyrights issued a certificate of registration (No. VAu 1-066-185). But the court concluded that the application was defective and the certificate invalid.

The magistrate judge discussed several ways of characterizing the registration—as a stand-alone registration of Mendota Reflection, as a compilation or group work, and as a "collection", which can be registered as a single work that covers all of its constituents. The judge found each of these

approaches wanting. We do not need to get beyond §408(a) and 37 C.F.R. §202.3(b)(4), which deal with the requirements for collections of unpublished works. Here's the important part of the regulation:

> In the case of unpublished works: all copyrightable elements that are otherwise recognizable as self-contained works, and are combined in a single unpublished "collection." For these purposes, a combination of such elements shall be considered a "collection" if:
>
>> (1) The elements are assembled in an orderly form;
>>
>> (2) The combined elements bear a single title identifying the collection as a whole;
>>
>> (3) The copyright claimant in all of the elements, and in the collection as a whole, is the same; and
>>
>> (4) All of the elements are by the same author, or, if they are by different authors, at least one of the authors has contributed copyrightable authorship to each element.
>
> Registration of an unpublished "collection" extends to each copyrightable element in the collection and to the authorship, if any, involved in selecting and assembling the collection.

37 C.F.R. §202.3(b)(4)(i)(B). There's no dispute about three of these four requirements. The submission has a single title ("Artwork of Q"), and Neri claims copyright in each of the sculptures and in the collection as a whole. But the magistrate judge found that Neri's submission was not in an "orderly form" and therefore could not be registered.

The magistrate judge described Neri's submission as a booklet containing photographs of several sculptures, plus some loose photographs. The sculpture installed at the Hughes residence is included among the loose photographs but not the booklet. The magistrate judge thought this disorderly and thus ineligible for registration. We tried to verify

this by looking for ourselves but encountered an obstacle: the material Neri submitted for registration is not in the record. Apparently the magistrate judge drew his understanding from questions and answers during depositions. At least once, Neri described her submission as the magistrate judge did; but at oral argument in this court Neri (who argued her own appeal) insisted that a photo of Mendota Reflection is in the booklet. The problem may be terminological; Neri may have used the title "Mendota Reflection" for more than one sculpture. But it is hard to understand how a court could conclude that a given submission is not "in an orderly form" when the submission cannot be examined.

Neri is the plaintiff, and a plaintiff who fails to put essential information into the record usually loses, but she has the benefit of the Register's certificate, which gives her claim at least prima facie support. 17 U.S.C. §410(c). This means that the defense needed to show why the court should disregard the registration, and absence of evidence redounds to the defense's detriment.

The magistrate judge thought that only a single bound book or booklet is an "orderly" way to present photographs of sculptures. If, as Neri contends, the Hughes sculpture is in the booklet, then this understanding implies that the registration is valid. What is more, we do not see why *only* a single document can be orderly. The Register did not say so, either in issuing the regulation or in evaluating Neri's submission. The Register found the submission adequate; a district court should not set aside an agency's application of its own regulations without a strong reason.

Although the district court thought Neri's form disorderly, it did not rely on any legal authority that establishes how

much order is required. We have found several discussions of registration under §202.3(b)(4)(i)(B), but none of these tackles the "orderly form" question. See *Fonar Corp. v. Domenick*, 105 F.3d 99 (2d Cir. 1997) (holding that a set of computer programs was in an orderly form but without providing a definition of that term); *Szabo v. Errisson*, 68 F.3d 940 (5th Cir. 1995); *L.A. Printex Industries, Inc. v. Aeropostale, Inc.*, 676 F.3d 841 (9th Cir. 2012); *United Fabrics International, Inc. v. C&J Wear, Inc.*, 630 F.3d 1255 (9th Cir. 2011). We are on our own.

Registration is required for litigation but not for the existence of copyright. This implies that registration serves a record-keeping function. It pins down details about what intellectual-property rights have been claimed. Cf. *Reed Elsevier, Inc. v. Muchnick*, 559 U.S. 154 (2010) (registration is a procedural but not a jurisdictional requirement). The most important detail is authorship—not simply who owns the copyright, but also the dates of the author's birth and death (since a copyright lasts for the author's life plus 70 years). The statute specifies nine pieces of information that a registration must include. 17 U.S.C. §409. Defendants do not deny that Neri's submission included all of those nine that apply to her claim. The regulation exercises a power conferred by §409(10): an applicant must supply "any other information regarded by the Register of Copyrights as bearing upon the preparation or identification of the work or the existence, ownership, or duration of the copyright."

Since the "orderly form" requirement implements a statute allowing the Register to require "other information", the key question must be whether the submission is organized well enough to permit users and courts to pin down the "information" on which copyright enforcement depends. The

Copyright Office said exactly this in a letter to Neri, conclud-
ing that her registration is valid because "the works have
been presented to us in a format from which they can readily
be identified." This implies that loose photographs could
suffice if numbered or labeled (for example, if each were
named, as the Office's letter said that Neri's submissions had
been).

Any organization that enables a court to associate a work
underlying the suit with a work covered by a registration
ought to do the trick. If a booklet (or PDF file) with page
numbers is orderly enough—as the magistrate judge
thought—a sequence of loose but numbered or named pho-
tographs should be enough too. Many a folder of photo-
graphs is better organized than a slapdash assortment run
off by a corner print shop. If the Hughes sculpture is identi-
fiable in the registration, that should do. But if, as defend-
ants suggest, it is not depicted at all—if the materials that
Neri submitted to the Copyright Office contain only photos
of sculptures similar to the one she made for Hughes—then
registration VAu 1-066-185 does not support this suit.

Anticipating that we might not accept the district court's
conclusion, defendants ask us to affirm the judgment on an
alternative ground: that Fritz Schomburg rather than Neri is
the author of Mendota Reflection. Schomburg is a glass-
blower (a gaffer) who made the 60 or so glass elements of the
sculpture. Neri assisted by making molten glass available as
Schomburg needed it. Defendants say that Schomburg's sta-
tus as the gaffer makes him the "true" author of the sculp-
ture. This assumes that only a change of form—here, from
drawings to glass—creates intellectual-property rights. De-
fendants might as well say that the typesetter owns a book's

copyright or that the members of an orchestra who play a new composition using their own interpretations of the score become the music's authors.

Most intellectual property is created in stages. Neri's claim depends not on her role as aide while Schomburg blew the glass, but on her design work: she decided what kind of glass would be created, in what shapes and colors, attached to what armatures, and where the glass elements would go relative to the ceiling and each other. The resulting whole is the sculpture in which Neri claims copyright. To the extent that Schomburg added features in the course of blowing the glass, he has a separate claim of intellectual property in a derivative work, but this does not detract from Neri's rights.

On remand, the district court may wish to take up other issues ahead of the "orderly form" question. One possible defense is consent from a joint author. Hughes approved the photography and its display, as did Architectural Building Arts. Both Hughes and Architectural Building Arts have potential claims to authorship—and, when a work has multiple authors, any of them can authorize reproduction. According to some evidence in discovery, both Hughes and Architectural Building Arts exercised discretion over the colors and arrangement of the 60 individual glass pieces. Neri denies that they played any such role, and we can't resolve that dispute on appeal.

Another potential defense is fair use. Architectural Building Arts and Sager were entitled to document their own roles in renovating Hughes's home. It was not possible to show what they had accomplished without displaying the sculpture along with the furniture and other aspects of the foyer. None of the defendants offered the photographs for

sale. It is hard to imagine that any viewer would have deemed a photograph of the Hughes vestibule to be a substitute for an original Neri artwork. (Neri does not contend that she sells photos of her works or that the defendants' activities have reduced her ability to start offering photos or other derivative works. To the contrary, Neri has placed pictures of Mendota Reflection on her own web site, http://www.quincyneri.com/#!glass, which anyone can access for free.) It is also hard to imagine that these photographs reduced the demand for Neri's art. They seem more like free advertising. But again the parties have not come to grips on the fair-use issue, so we cannot resolve it on appeal.

One final comment. Neri contends that she has registered the Hughes sculpture by itself, avoiding all issues about the "collection" regulation. She did not alert the district court to this until after the summary-judgment briefs had been filed, and the magistrate judge did not abuse his discretion by concluding that Neri had waited too long. Now that the case must be reconsidered in the district court, however, the judge may think it prudent to revisit this subject, which could avoid any need to go back over whether the "Artwork of Q" submission allows litigation about defendants' photographs that include the Hughes sculpture.

VACATED AND REMANDED