[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No.  20-10825
Non-Argument Calendar
_____

D.C. Docket No.  6:18-cv-01555-RBD-DCI

OFF LEASE ONLY, INC.,

Plaintiff-Appellant,

versus

LAKELAND MOTORS, LLC,
d/b/a/ LAKELAND CHRYSLER
DODGE, JEEP, RAM,

Defendant-Appellee.

_____

Appeal from the United States District Court
for the Middle District of Florida
_____

(September 17, 2020)

Before JILL PRYOR, BRANCH, and BRASHER, Circuit Judges.

PER CURIAM:

Off Lease Only, Inc., appeals the summary judgment in favor of Lakeland

Motors, LLC. Off Lease argues that the district court erred in determining that there

was no genuine dispute of material fact with respect to its copyright infringement and trademark infringement claims against Lakeland. Upon consideration, we conclude that Off Lease's arguments lack merit. Accordingly, we affirm the district court's order.

## I. BACKGROUND

We presume familiarity with the factual and procedural history of this case. We describe it below only to the extent necessary to address the issues raised in this appeal.

Off Lease is a used-car dealership that sells cars in offices throughout Florida, as well as online. It has also acquired intellectual property rights for some of its advertising. The following three rights are relevant to this case.

First, Off Lease owns a copyright titled "3d Need a Used Car," U.S. Copyright Registration No. VA 1-995-477. The copyright is a "work of the visual arts" and covers two-dimensional artwork. The artwork in question consists of a stylized outline of a car containing the phrase "OffleaseOnly.com" and a specific color scheme for the outline and the background.

Second, Off Lease owns a federal trademark for a service mark titled "DON'T PAY MORE," U.S. Registration No. 3629566. The federal trademark's registration contains the following description: "[t]he color(s) red, black and white is/are claimed as a feature of the mark. The mark consists of 'DON'T PAY MORE' in all capitals,

'DON'T' is in a red box, above 'PAY' in a black box, above 'MORE' in a red box; all lettering is in white." The same registration also includes the disclaimer that "no claim is made to the exclusive right to use 'don't pay more' apart from the mark as shown."

Third, Off Lease owns a Florida trademark for a service mark also titled "DON'T PAY MORE," Florida Trademark Registration No. T14-1233. The Florida trademark's registration has essentially the same description and disclaimer as the federal trademark's registration.

Off Lease employs the protected artwork and mark described above in its billboard advertising. Many of its billboards contain (1) the copyrighted artwork underneath the all-capitals phrase "NEED A USED CAR?" and (2) the trademarked service mark in a smaller size near one of the billboard's corners. Below is an example of such a billboard:



Some of these billboards are placed along the stretches of Interstate 4 ("I-4") surrounding Orlando, where Off Lease has an office.

3

Lakeland is a used-car dealership that is about an hour from Orlando by car. Like Off Lease, it too has billboards along I-4. Some of these billboards contain, from top to bottom, (1) the all-capitals phrase "NEED A USED CAR?", (2) a name under which Lakeland does business, and (3) the phrase "Don't Pay More," which is sometimes in all-capitals. Below is an example of such a billboard:



Other billboards use different phrases at the top and bottom to surround the business name.

Off Lease filed a complaint against Lakeland, suing it for injunctive relief, copyright infringement, federal trademark infringement, federal trademark dilution, Florida trademark infringement, and Florida trademark dilution. Off Lease later filed an amended complaint containing the same claims. It subsequently filed a motion for the voluntary dismissal of its federal trademark dilution claim, which the district court granted. Lakeland filed a motion for summary judgment against Off Lease on all of its claims. The district court granted Lakeland's motion in its entirety, and Off Lease timely appealed the decision.

4

## II. STANDARD OF REVIEW

"We review a district court's grant of summary judgment de novo, viewing all the evidence, and drawing all reasonable factual inferences, in favor of the nonmoving party." *Amy v. Carnival Corp.*, 961 F.3d 1303, 1308 (11th Cir. 2020) (citation omitted). "A grant of summary judgment is proper if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *Id.* (cleaned up).

"A fact is 'material' if it might affect the outcome of the suit under the governing law." *BBX Capital v. FDIC*, 956 F.3d 1304, 1314 (11th Cir. 2020) (cleaned up) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). "A dispute over such a fact is 'genuine' if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *BBX Capital*, 956 F.3d at 1304 (cleaned up) (quoting *Anderson*, 477 U.S. at 248).

## III. DISCUSSION

Off Lease argues that the district court erred in determining that there was no genuine dispute of material fact with respect to Off Lease's claims of copyright infringement and federal and Florida trademark infringement. Regarding copyright infringement, Off Lease argues that there is a genuine dispute of material fact as to whether Lakeland's billboards are substantially similar to its copyrighted artwork. Regarding federal and Florida trademark infringement, Off Lease argues that there

is a genuine dispute of material fact as to whether Lakeland's billboards are likely to cause confusion with Off Lease's federal and state trademarks. We conclude that Off Lease's arguments fail and address each of them in turn.

## A. *Copyright Infringement*

Off Lease's first argument concerns its federal copyright in artwork of the stylized car, color scheme, and background. "Copyright infringement has two elements: (1) ownership of a valid copyright, and (2) copying of protectable elements." *Home Design Servs., Inc. v. Turner Heritage Homes Inc.*, 825 F.3d 1314, 1320 (11th Cir. 2016) (cleaned up).

Regarding the first element, a valid copyright can be available for "a work formed by the collection and assembling of preexisting materials or of data that are selected, coordinated, or arranged in such a way that the resulting work as a whole constitutes an original work of authorship." 17 U.S.C. § 101. Known as compilations, such works have only a "thin" copyright protection, extending only to selection, coordination, or arrangement of elements. *See Intervest Const., Inc. v. Canterbury Estate Homes, Inc.*, 554 F.3d 914, 919 (11th Cir. 2008) ("Accordingly, any similarity comparison of the works at issue here must be accomplished at the level of protected expression—that is, the arrangement and coordination of those common elements . . . . In undertaking such a comparison, it should be recalled that

6

the copyright protection in a compilation is 'thin.'" (footnote omitted) (citing *Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 349 (1991))).

"The second element can be proven either with direct proof of copying or, if direct proof is unavailable, by demonstrating that the defendant[] had access to the copyrighted work and that the works are substantially similar." *Home Design*, 825 F.3d at 1321 (cleaned up). Substantial similarity exists "where an average lay observer would recognize the alleged copy as having been appropriated from the copyrighted work." *Intervest*, 554 F.3d at 920 (cleaned up). "[W]hen courts have examined copyright infringement claims involving compilations[,] the definition of 'substantial similarity' has been appropriately modified to accentuate the narrower scope of protection available." *Id.* at 921 (emphasizing that "the substantial similarity analysis must focus on similarity of expression, i.e., material susceptible of copyright protection" (cleaned up)). But "if the similarity between two works concerns only non-copyrightable elements, then there can be no copyright infringement as a matter of law." *Home Design Servs.*, 825 F.3d at 1324 (cleaned up).

"[W]e have approved the use of summary judgment particularly in cases where: (1) because access has been established, the crucial issue is substantial similarity; (2) there may be substantial similarity with respect to the non-copyrightable elements of the two works compared; and, (3) as to the protectable

elements, there is substantial dissimilarity." *Intervest*, 554 F.3d at 920 (citation omitted). "In fact, when the crucial question in a dispute involving compilations is substantial similarity at the level of protectable expression, it is often more reliably and accurately resolved in a summary judgment proceeding." *Id.*

Here, the district court granted summary judgment against Off Lease on its copyright claim because the similarities between Off Lease's and Lakeland's billboards concern only noncopyrightable elements, namely slogans, short expressions, and a business name. The district court noted that Lakeland's billboard does not use the same color as Off Lease's billboard or the outline of the car, which makes Off Lease's billboard unique.

Off Lease argues that issues of fact preclude summary judgment for two reasons. Neither is persuasive.

First, Off Lease argues that the scope of its copyright extends beyond just the artwork described above and covers the phrases printed on them. But the only similarity between Off Lease's and Lakeland's billboards is that they both contain the phrase "Need a Used Car?" positioned somewhere above the business name and the phrase "Don't Pay More." Therefore, to successfully prove copyright infringement, Off Lease would have to show that its copyright covers the compilation consisting of this arrangement. Yet Off Lease provides no support for

8

this assertion. It provides no citations to the record showing that its copyright covers more than mere artwork—let alone a compilation of business-related phrases.

Moreover, as Lakeland correctly notes and Off Lease apparently agrees, even if Off Lease's copyright did cover a compilation, that compilation would consist of the arrangement of *all* of the elements on its billboards. Those elements include not only business-related phrases, but also elements in the artwork. Thus, to prevail on its copyright infringement claim, Off Lease would have to show that Lakeland's billboards are substantially similar to its own billboards with respect to the arrangement of these phrases and artistic elements. But no reasonable jury could find that this substantial similarity exists. Lakeland's billboards lack all the artistic elements found on Off Lease's billboards, such as the outline, the car shape, and the elaborate color scheme.

Second, Off Lease erroneously argues that the district court should have applied the two-part test for determining substantial similarity in the Ninth Circuit's decision in *L.A. Printex Industries, Inc. v. Aeropostale, Inc.*:

> To determine whether two works are substantially similar, we apply a two-part test. The "extrinsic test" is an objective comparison of specific expressive elements; it focuses on the articulable similarities between the two works. The "intrinsic test" is a subjective comparison that focuses on whether the ordinary, reasonable audience would find the works substantially similar in the total concept and feel of the works.

676 F.3d 841, 848 (9th Cir.), *as amended on denial of reh'g and reh'g en banc* (June 13, 2012) (cleaned up). As we have explained elsewhere, the two-part test used in

9

*L.A. Printex* is an anomaly in this Court that we have not referenced in a published opinion since 1999.[1] But in any event, applying the two-part test to the instant case would not undermine the entry of summary judgment. Under the "extrinsic test" of *L.A. Printex*, "we distinguish protectible from unprotectible elements and ask only whether the protectible elements in two works are substantially similar." 676 F.3d at 849 (citation omitted). Only the "original selection, coordination, and arrangement of unprotectible elements" in a compilation "may be protectible expression" under this test. *Id.* (cleaned up). And as explained earlier, Off Lease has failed to show that Lakeland's billboards are substantially similar to the *protectible* elements of Off Lease's billboards. This failure remains regardless whether those protectible elements consist of only the billboards' artwork or also their arrangement of artistic elements and business-related phrases.

For these reasons, the district court did not err in granting summary judgment against Off Lease on its copyright infringement claim.

---

[1] *See Oravec v. Sunny Isles Luxury Ventures, L.C.*, 527 F.3d 1218, 1224 n.5 (11th Cir. 2008) ("In *Herzog [v. Castle Rock Entm't*, 193 F.3d 1241 (11th Cir. 1999)], we approved a district court opinion that framed this analysis as a two-part inquiry similar to that established by the Ninth Circuit . . . . That approach involves 'extrinsic' and 'intrinsic' tests . . . . This aspect of the *Herzog* decision is something of an anomaly in our copyright jurisprudence. Prior to that case, the extrinsic/intrinsic framework had not been recognized in this circuit, and we have not referenced it in subsequent published decisions dealing with the issue of substantial similarity." (citations omitted)).

## B. Trademark Infringement

Off Lease's second argument concerns its federal and state trademarks in the red, black, and white graphic with the phrase "Don't [red] Pay [black] More [white]." Off Lease's federal trademark claim and its Florida trademark infringement claim are governed by the same test. *See Investacorp, Inc. v. Arabian Inv. Banking Corp. (Investcorp) E.C.*, 931 F.2d 1519, 1521 (11th Cir. 1991). To establish a *prima facie* case of trademark infringement under the Lanham Act, "a plaintiff must show (1) that it had trademark rights in the mark or name at issue and (2) that the other party had adopted a mark or name that was the same, or confusingly similar to its mark, such that consumers were likely to confuse the two." *Commodores Entm't Corp. v. McClary*, 879 F.3d 1114, 1130–31 (11th Cir.), *cert. denied*, 139 S. Ct. 225 (2018). "Likelihood of confusion is synonymous with probable confusion—it is not sufficient if confusion is merely possible." *Yellowfin Yachts, Inc. v. Barker Boatworks, LLC*, 898 F.3d 1279, 1295 (11th Cir. 2018) (cleaned up).

To assess whether a likelihood of consumer confusion exists, we consider these seven factors:

> (1) the strength of the allegedly infringed mark;
> (2) the similarity of the infringed and infringing marks;
> (3) the similarity of the goods and services the marks represent;
> (4) the similarity of the parties' trade channels and customers;
> (5) the similarity of advertising media used by the parties;

11

(6) the intent of the alleged infringer to misappropriate the proprietor's good will; and

(7) the existence and extent of actual confusion in the consuming public.

*Fla. Int'l Univ. Bd. of Trustees v. Fla. Nat'l Univ., Inc.*, 830 F.3d 1242, 1255 (11th Cir. 2016) (formatting added) (citation omitted). "Of these factors, the type of mark and the evidence of actual confusion are the most important." *Id.*

"Although likelihood of confusion is a question of fact, it may be decided as a matter of law." *Yellowfin Yachts*, 898 F.3d at 1289 (citation omitted). "The role of the district court in reviewing a motion for summary judgment is to determine the ultimate question of whether, in light of the evidence as a whole, there is sufficient proof of a likelihood of confusion to warrant a trial of the issue." *Id.* (cleaned up). "Because we review the district court's decision de novo, using the same legal standards it employed, our role is effectively the same." *Id.* (citation omitted).

The district court noted that that there is no evidence of actual confusion and reasoned that three factors—similarity of goods and services, trade channels and customers, and advertising—support finding a likelihood of confusion and the remaining four, including the two most important, do not. Off Lease argues that the district court erred in evaluating the strength of Off Lease's marks, the similarity between Off Lease's and Lakeland's marks, the similarity of the goods and services represented by Off Lease's and Lakeland's marks, and Lakeland's intent to

12

misappropriate Off Lease's goodwill. For the following reasons, we are not persuaded that Off Lease's arguments warrant reversing the district court.

## 1. Strength of the Mark

"Determining the strength of any mark requires weighing either or both circumstantial evidence of advertising and promotion and direct evidence of consumer recognition, such as by a survey." *Fla. Int'l*, 830 F.3d at 1259 (citation omitted). The district court concluded that Off-Lease's mark was not particularly strong based, in part, on evidence that many car dealers in Florida have used the phrase "Don't Pay More" in their advertising. Off Lease argues that the district court erred in analyzing this factor because many of these third-party uses of the phrase came *before* Off Lease registered its marks.

We disagree for three reasons. First, the district court's conclusion that Off Lease's mark is not strong is supported by the disclaimers in the mark's registrations. These disclaimers *expressly* disavow any claim to the right to use the phrase "Don't Pay More" "apart from the mark as shown" with its tricolor scheme and with each word stacked above the following word in the phrase. The registrations emphasize that the mark protects only the color scheme and word-stacking—not the phrase itself. Second, there is no direct evidence, through a consumer survey or otherwise, that consumers recognize the phrase as being connected with Off Lease. Third, as the district court noted, evidence in the record shows that many local car dealers

13

have used the phrase "Don't Pay More" in their advertising, which is circumstantial evidence that those words—by themselves—are not connected to Off Lease's mark. This evidence is relevant, even if much of that advertising came before Off Lease registered the mark.

### 2. Similarity Between the Marks

Off Lease argues that the district court failed to consider how the overall design of the billboard might be likely to confuse consumers. In support of its argument, Off Lease cites our decision in *Frehling Enterprises, Inc. v. International Select Group, Inc.*, where we concluded that the use of additional words did little to reduce the likelihood caused by the overall similarity between the disputed mark, "BELL' OGGETTI," and the plaintiff's mark "OGGETTI." 192 F.3d 1330, 1337 (11th Cir. 1999). As we explained there, the dominant focus in both marks was the Italian term "OGGETTI" in all capitals, and the use of some additional words— "BELL" and "Tavola Collection"—did not undermine the substantial similarly of the marks. Here, however, the marks in question are quite different. Off Lease's mark and Lakeland's advertising both use the phrase "Don't Pay More," but Off Lease's mark registrations expressly disclaim the exclusive right to that phrase. Other than the phrase, there is no similarity. Lakeland's advertising is in an entirely different layout with many other design, formatting, and color differences.

14

### *3. Similarity of Goods*

Off Lease argues that the district court erred in concluding that this factor weighs only slightly in favor of a likelihood of confusion. Specifically, Off Lease argues that the district court mistakenly determined that the inclusion of the phrase ".com" in Off Lease's business name on its billboards reduced the likelihood of confusion with Lakeland's billboards. But Off Lease misunderstands the district court's analysis. The district court's conclusion was not based on the mere inclusion of the phrase ".com" in Off Lease's business name on its billboards. Instead, the district court reasoned that the similarity of goods was unlikely to cause confusion because, on their respective billboards, Lakeland uses the phrase "Don't Pay More" with its business name, and Off Lease uses the phrase with its distinctive business name, "OffleaseOnly.com." Because of these very different, prominently displayed business names, it is less likely that a reasonable consumer would attribute Off Lease's and Lakeland's goods to a single source.

### *4. Intent to Misappropriate*

Finally, Off Lease argues that a reasonable jury could conclude that Lakeland intended to misappropriate Off Lease's goodwill when it put up its billboards. The alleged evidence of this intent is that (1) Lakeland's billboards were created within months of Off Lease placing its billboards along I-4; (2) Lakeland's owner was

15

aware of Off Lease and its billboards; and (3) the font size of the phrase "Don't Pay More" on the billboards suggests an intent to misappropriate.

We disagree. This evidence would not allow a reasonable jury to conclude that "the defendant adopted its mark with the intent of deriving benefit from the reputation of the plaintiff." *Sovereign Military Hospitaller Order of St. John of Jerusalem of Rhodes & of Malta v. Fla. Priory of the Knights Hospitallers of the Sovereign Order of St. John of Jerusalem, Knights of Malta, The Ecumenical Order*, 809 F.3d 1171, 1188 (11th Cir. 2015) (cleaned up). Such intent involves "[b]ad faith in the adoption and use of a trademark [that] normally involves efforts by a party to 'pass off' its product as that of another." *Id.* (citation omitted). Mere knowledge of another's mark does not create an inference of intent to misappropriate. And as the record shows, Lakeland's business name was displayed prominently on its billboards. This display suggests that Lakeland had no intent to trade on Off Lease's goodwill or reputation, irrespective of the precise font sizes used.

For these reasons, the district court did not err in granting summary judgment against Off Lease on its federal and Florida trademark infringement claims.

## IV. CONCLUSION

For the foregoing reasons, we **AFFIRM** the district court.

16