FAMILY DOLLAR STORES, INC., Plaintiff,

v.

UNITED FABRICS INTERNATIONAL, INC., Defendant.

United Fabrics International, Inc., Counterclaimant,

v.

Prestige Global Company, Ltd. and Family Dollar Stores, Inc., Counter-defendants.

No. 11 Civ. 2574 (CM).

United States District Court, S.D. New York.

Sept. 11, 2012.

Ariel Samuel Peikes, Richard Scott Schurin, Gottlieb Rackman & Reisman, P.C., New York, NY, for Plaintiff/Counter-defendants.

Michael Douglas Steger, Law Offices of Michael D. Steger, PC, New York, NY, for Defendant/Counterclaimant.

## DECISION AND ORDER DENYING UNITED FABRIC INTERNATIONAL'S MOTION FOR PARTIAL SUMMARY JUDGMENT AND GRANTING FAMILY DOLLAR STORES AND PRESTIGE GLOBAL COMPANIES' MOTIONS FOR SUMMARY JUDGMENT AND TO WITHDRAW ADMISSIONS

McMAHON, District Judge:

On April 15, 2011, Family Dollar Stores filed this lawsuit against United Fabrics International, Inc. ("UFI"), seeking a declaration that UFI's "copyright rights are invalid, void, unenforceable and/or not infringed by the clothing product sold by" Family Dollar Stores. (Compl. at 4.) On June 9, 2011, UFI answered and counterclaimed against Family Dollar Stores and Prestige Global Company Ltd. ("Prestige")

(collectively, the "FD Defendants") for copyright infringement and vicarious copyright infringement.

UFI filed its motion for partial summary judgment on January 4, 2012, and the FD Defendants cross-moved for summary judgment to dismiss UFI's counterclaims on January 27, 2012. The FD Defendants also filed a motion to withdraw any admissions that the Court may find to have been made by the failure to answer requests for admit that, according to the FD Defendants, were not properly served.

UFI's motion for summary judgment is denied, and the FD Defendants' motions to dismiss UFI's counterclaims and withdraw its admissions are granted.

## BACKGROUND

UFI is a Los Angeles-based textile company. Family Dollar Stores operates more than 6,800 general merchandise retail discount stores in 44 states. Prestige Global is Family Dollar Stores' agent, works with Family Dollar Stores to create garments for sale, and assists Family Dollar Stores in the purchase of such garments from overseas manufacturers.

In 2008, UFI purchased all rights to original artwork from Studio 33 s.r.l., a design studio located in Como, Italy. UFI's design team used that artwork as source material, and developed that artwork to create the Mod Squad design.

In 2008, UFI began offering the Mod Squad design for sale to customers. (Parties' 56.1 Statements ¶ 24.) From September 22, 2008 through January 8, 2009, UFI transacted numerous sales of fabric with the Mod Squad design to customers. (Id. ¶ 20.) UFI admitted as much in its Answer and Counterclaims, alleging that "As early as 2008, Counterclaimant was publishing and offering for sale a two-dimensional artwork which it had allocated as

'Mod Squad.' " (Id. ¶ 29.) The Copyright Act defines publication as

> the distribution of copies or phonorecords of a work to the public by sale or other transfer of ownership, or by rental, lease, or lending. The offering to distribute copies or phonorecords to a group of persons for purposes of further distribution, public performance, or public display, constitutes publication. A public performance or display of a work does not of itself constitute publication.

17 U.S.C. § 101.

On January 8, 2009, UFI filed an application with the United States Copyright Office to register the Mod Squad design and 18 other fabric designs as an unpublished collection. The copyright application did not state that UFI published Mod Squad design prior to the application. As discovery would later show, UFI actually published 13 of the 19 designs included in the so-called "unpublished collection" prior to registration. (Schurin Supp. Decl. ¶ 7.)

Based on UFI's representations, the Copyright Office issued a registration certificate for an unpublished collection, with registration number "VAu 978–345" (the "Registration"). The "u" represents that the works are unpublished. *Determined Prods., Inc. v. Koster*, C 92–1697 BAC, 1993 WL 120463, at *1 (N.D.Cal. Apr. 13, 1993).

The parties dispute whether UFI omitted information about the publication with the intent to defraud the Copyright Office into issuing the Registration. The FD Defendants argue that UFI falsely and knowingly certified to the Copyright Office that Mod Squad was unpublished as of January 8, 2009. UFI disagrees, and contends that its copyright applications are put together by design room assistants, and that those assistants believed in good faith that UFI "was supposed to register the group that included Mod Squad as

unpublished because [UFI] had not published this group together in the past." (UFI's Opp'n to the FD Defs.' Mot. for Summ. J. at 6 (citing Simantob Reply Decl. ¶ 4).) As will be seen below, this factual dispute about fraud on the Copyright Office—which is almost never appropriately resolved on a motion—is immaterial to the resolution of this motion.

On March 2011, UFI's counsel wrote to Family Dollar Stores, alleging that Family Dollar Stores violated UFI's registered copyright rights in the Mod Squad design; UFI attached a copy of the Registration to the letter. UFI threatened to sue Family Dollar Stores if its demands were not met.

On April 15, 2011, Family Dollar Stores filed its complaint for a declaration that UFI's "copyright rights are invalid, void, unenforceable and/or not infringed by the clothing product sold by" Family Dollar Stores. (Compl. at 4.) On June 9, 2011, UFI answered and counterclaimed against Family Dollar Stores and Prestige for direct and vicarious copyright infringement.

UFI filed its motion for partial summary judgment on January 4, 2012, and the FD Defendants cross-moved for summary judgment to dismiss UFI's counterclaims on January 27, 2012.

The FD Defendants also moved on January 27, 2012, to "withdraw any admissions that the Court may find to have been made by the failure to answer requests to admit which ... were never served on the [FD Defendants,] or if deemed served, were not due until the close of discovery." (ECF No. 27.)

The issue on the summary judgment motions is whether UFI's copyright registration for an "unpublished" collection con-

taining the previously published Mod Squad design—"VAu 978—345" is valid.[1]

In February and March of this year—after both the close of discovery and the submission of the cross—motions for summary judgment—UFI advised the Court that it had filed a Form CA (for supplementary registration, i.e., to amend errors in its original unpublished collection single registration), which removed all designs other than Mod Squad from the "collective" registration—thus purportedly correcting the above "putative error" made by the design room assistants on the original application. A copyright owner may file an application for supplementary registration

"to correct an error in a copyright registration or to amplify the information given in a registration." 17 U.S.C. § 408(d); 37 C.F.R. § 201.5. "The information contained in a supplementary registration augments but does not supersede that contained in the earlier registration," 17 U.S.C. § 408(d), and the earlier registration is not "expunged or cancelled," 37 C.F.R. § 201.5(d)(2).

*L.A. Printex Indus. v. Aeropostale,* 676 F.3d 841, 853 (9th Cir.2012). UFI represented that the Copyright Office had approved the amendment, thereby "render[ing] moot any argument that the registration was invalid on the basis of erroneous publication information, or that the other designs may have been published separately, as said designs are no longer part of the registration." (UFI's March 22, 2012 Letter to the Court.) According to UFI, "Even if Family Dollar were to prevail on its defense that the registration was invalid, UFI could refile this case on the basis of the Form

---

1. I note that, while the FD Defendants cross-moved for summary judgment dismissing UFI's counterclaims with prejudice, Family

Dollar Stores did not move for summary judgment on its claim for declaratory judgment. (*See* ECF No. 30.)

CA the next day, which would simply restart this case from scratch." (*Id.*)

UFI did not submit the approved supplemental registration to the Court.

## DISCUSSION

Summary judgment is designed "to flush out those cases that are predestined to result in directed verdict." *Lightfoot v. Union Carbide Corp.*, 110 F.3d 898, 907 (2d Cir.1997). Thus, a party is entitled to summary judgment when there is "no genuine issue as to any material fact" and the undisputed facts warrant judgment for the moving party as a matter of law. Fed. R.Civ.P. 56; *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). On a motion for summary judgment, the court must view the record in the light most favorable to the nonmoving party and draw all reasonable inferences in its favor. *Matsushita Elec. Indus. Co. Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). The moving party has the initial burden of demonstrating the absence of a disputed issue of material fact. *Celotex v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

Once such a showing has been made, the nonmoving party must adduce specific facts demonstrating a genuine dispute over a material issue, requiring resolution by trial. The nonmovant "may not rely on conclusory allegations or unsubstantiated speculation," *Scotto v. Almenas*, 143 F.3d 105, 114 (2d Cir.1998), but must support the existence of an alleged dispute with specific citation to the record materials. Fed.R.Civ.P. 56(c). In other words, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita*, 475 U.S. at 586, 106 S.Ct. 1348. Rather, sufficient evidence must exist upon which a reasonable jury could return a verdict for the nonmoving party.

Moreover, identifying a "genuine" dispute is not necessarily enough to defeat the motion, because not every disputed factual issue is material in light of the substantive law that governs the case. "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude summary judgment." *Anderson*, 477 U.S. at 248, 106 S.Ct. 2505.

## I. The FD Defendants' Motion To Withdraw Its "Admissions" Is Granted

█ On October 21, 2011, UFI "electronically served" the FD Defendants' counsel with its first set of requests for admission. These requests contained the following questions:

7. Admit that the SUBJECT GARMENTS bear a design that infringes the SUBJECT DESIGN ...

18. Admit that YOU knew YOU were committing copyright infringement when YOU instructed YOUR vendor to use the design on the SUBJECT GARMENTS.

(Burroughs Decl. Exs. 16–17.) The FD Defendants never responded to UFI's requests. (*Id.* ¶ 5.)

UFI claims that, pursuant to Federal Rule of Civil Procedure 36(a)(3), the FD Defendants' failure to respond to the requests means that they have admitted them, and that their "admissions" require that I grant UFI's motion for summary judgment and find the FD Defendants liable for willful trademark infringement. The FD Defendants moved to withdraw these "admissions" at the same time they filed their cross-motion for summary judgment. The FD Defendants' motion is granted, because UFI did not properly serve the requests.

Federal Rule of Civil Procedure 5(a) provides that service on an opposing party may be made by:

(A) handing it to the person;

(B) leaving it:

(i) at the person's office with a clerk or other person in charge or, if no one is in charge, in a conspicuous place in the office; or

(ii) if the person has no office or the office is closed, at the person's dwelling or usual place of abode with someone of suitable age and discretion who resides there;

(C) mailing it to the person's last known address—in which event service is complete upon mailing;

(D) leaving it with the court clerk if the person has no known address;

(E) sending it by electronic means if the person consented in writing—in which event service is complete upon transmission, but is not effective if the serving party learns that it did not reach the person to be served; or

(F) delivering it by any other means that the person consented to in writing—in which event service is complete when the person making service delivers it to the agency designated to make delivery.

Fed.R.Civ.P. 5(b)(2). UFI's requests to admit were not served by any of the means identified by Rule 5(b)(2)(A) through (D). Rather, UFI contends that it "served" the requests via electronic mail.

 But service via electronic mail is only appropriate if the person to be served in that manner "consented to it in writing." *Id.* 5(b)(2)(E). "Without this written consent, such attempted service shall be considered void." *Ortiz–Moss v. N.Y. City* *Dept. of Transp.,* 623 F.Supp.2d 404, 407 (S.D.N.Y.2008) (internal quotations and citation omitted). Furthermore, "Consent must be express, and cannot be implied from conduct." *Wright–Jackson v. HIP Health Plan,* No. 07 CIV. 1819(DFE), 2009 WL 1024244, at *7 (S.D.N.Y. Apr. 15, 2009) (quoting Advisory Committee Notes to Fed.R.Civ.P. 5, 2001 Amendments).

Here, it is undisputed that the FD Defendants did not consent *in writing* to accept service by electronic means. (Schurin Decl. in Supp. of Mot. to Withdraw Admissions ¶ 2.) Thus, the service was void, and no response was necessary. The FD Defendants' motion to withdraw the admissions is granted.

## II. The Issues Presented By The Motions For Summary Judgment

The thrust of the FD Defendants' case is that UFI's copyright registration for the unpublished collection containing the Mod Squad design is invalid, and therefore does not satisfy the legal prerequisite to bringing a copyright infringement action.[2]

At issue is the Registration—a single registration copyright—that, as originally filed, was for an "unpublished collection" that includes the Mod Squad design (as well as 18 other designs). The FD Defendants claim that the Registration does not meet the requirements of an unpublished collection because UFI published the Mod Squad and twelve other designs prior to the filing of UFI's application for an unpublished collection copyright registration. It argues that, if UFI does not have a valid registration, I must dismiss UFI's copyright infringement counterclaims, because UFI has no right to pursue them. 17 U.S.C. § 411(a).

---

**2.** This is the only copyright registration at issue on this motion, contrary to UFI's contentions (discussed further below).

UFI contends in return that its registration is perfectly valid, and that this Court should find that the FD Defendants willfully infringed its copyright.

Because I agree with the FD Defendants that UFI's registration is invalid as to the Mod Squad design, I need not address UFI's contention that the FD Defendants' design infringes on the Mod Squad. UFI has no right to maintain this action on the basis of the registration that was on file on the date it asserted its counterclaims.

## III. UFI Cannot Bring Suit On Its Purported Unpublished Collection Copyright Registration

■ "It is clear that, as to works created on and after January 1, 1978, the effective date of the current Copyright Act, registration is not a condition to obtaining copyright." *Nimmer on Copyright* § 7.16[A][1] (citing 17 U.S.C. § 408(a)). Rather, a copyright "automatically inheres in a work the moment it is created, which is to say when it is fixed in a copy or phonorecord for the first time." *Id.* (internal footnotes and quotations omitted); *see also BUC Int'l Corp. v. Int'l Yacht Council Ltd.,* 489 F.3d 1129, 1141–42 (11th Cir. 2007). "Notwithstanding that proposition, some courts still imprecisely refer to a work being 'copyrighted' rather than 'registered.'" *Nimmer on Copyright* § 7.16[A][1].

However, a copyright alone is not sufficient to permit a suit for copyright infringement. A copyright holder may only sue for infringement of that copyright if it possesses a valid copyright registration. 17 U.S.C. § 411(a) ("No action for infringement of the copyright in any United States work shall be instituted until preregistration or registration of the copyright claim has been made in accordance with this title."); *Reed Elsevier, Inc. v. Mu-*chnick, 559 U.S. 154, 130 S.Ct. 1237, 1241, 176 L.Ed.2d 18 (2010); *McLaren v. Chico's FAS, Inc.,* No. 10 CIV. 2481 JSR, 2010 WL 4615772, at *1 (S.D.N.Y. Nov. 9, 2010).

■ "A certificate of copyright registration is prima facie evidence that the copyright is valid." *Fonar Corp. v. Domenick,* 105 F.3d 99, 104 (2d Cir.1997) (citing 17 U.S.C. § 410(c)). This presumption is rebuttable. *See id.; McLaren,* 2010 WL 4615772, at *4.

■ The Copyright Act permits the registration of multiple works as a single work. 17 U.S.C. § 407(c)(1). Copyright regulations divide these "single work registrations" into published and unpublished collections. *See* 37 C.F.R. § 202.3(b)(4)(i). A published collection of works must be "sold, distributed or offered for sale concurrently." *United Fabrics Int'l, Inc. v. C & J Wear, Inc.,* 630 F.3d 1255, 1259 (9th Cir.2011). For unpublished works, "there is no such requirement." *Id.*

A group of unpublished works may be registered as a single work, upon payment of a single registration fee, but only if it consists of "all copyrightable elements that are otherwise recognizable as self-contained works, and are combined in a single unpublished 'collection.'" 37 C.F.R. 202.3(b)(4)(i)(B). A combination of such elements is considered a "collection" if:

(1) The elements are assembled in an orderly form;

(2) The combined elements bear a single title identifying the collection as a whole;

(3) The copyright claimant in all of the elements, and in the collection as a whole, is the same; and

(4) All of the elements are by the same author, or, if they are by different authors, at least one of the authors has contributed copyrightable authorship to each element.

37 C.F.R. 202.3(b)(4)(i). "Registration of an unpublished 'collection' extends to each copyrightable element in the collection and to the authorship, if any, involved in selecting and assembling the collection." *Id.*

It is undisputed that UFI published the Mod Squad design by selling it before the effective date of registration of the unpublished collection at issue. (Parties' 56.1 Statements ¶¶ 24, 29.) Thus, the purely legal issue for me to resolve is whether UFI's has validly registered its copyright in the Mod Squad design as part of the unpublished collection single registration.

The answer to this question is no: a published design included in an unpublished collection copyright registration application cannot be registered as part of the collection. The Copyright Office's *Compendium II: Compendium of Copyright Office Practices,* states that, "Where the applicant seeks registration as an unpublished work and provides the Office with a statement of facts which clearly show that publication has occurred, the Office will not register a claim to copyright in the work as unpublished." United States Copyright Office, *Compendium of Office Practices II* § 904(5).

*Determined Productions, Inc. v. Koster,* No. C 92–1697 BAC, 1993 WL 120463 (N.D.Cal. Apr. 13, 1993), is one of the few cases to directly address the issue presented here. In *Koster,* a toy company submitted an application for a copyright registration of a collection; the application did not include a date of first publication. *Id.* at *1. The Copyright Office issued a certificate of registration for an unpublished collection. It was clear that the toy company had published all the items in the collection prior to the effective date of the registration.

The court held that the copyright was invalid, reasoning, "Wrongly identifying a number of published individual works as an unpublished collection is a fundamental registration error." *Id.* (citing 17 U.S.C. § 411(a); United States Copyright Office, *Compendium of Copyright Office Practices* § 1507.07(a)). Because there was no valid copyright registration, the court dismissed the infringement claim.[3]

UFI did not address *Koster* in its briefs, even though the FD Defendants discuss it at length. That, I assume, is because it has no answer to the case.

*Koster's* holding is supported by statements made by the Register of Copyright, as the Ninth Circuit recognized in *L.A. Printex Industries v. Aeropostale,* 676 F.3d 841 (9th Cir.2012).[4] *L.A. Printex* concerned, in part, a challenge to the validity of an unpublished collection copyright registration that contained some published and some unpublished works. In *L.A. Printex,* the plaintiff claimed that the defendant infringed one of its designs, which was registered in a single unpublished collection that contained a group of five floral designs. After filing the lawsuit, the plaintiff became aware that its copyright registration for the unpublished collection "contained an error:" two of the designs had been published before the copyright's date of registration. *Id.* at 845. The plaintiff filed an application for a supplementary registration (basically, a form used to cor-

---

3. The *Koster* court dismissed the claim for lack of jurisdiction, citing 17 U.S.C. § 411(a). The Supreme Court has since clarified that § 411(a) is not jurisdictional, but rather establishes a necessary precondition to bringing a claim for copyright infringement. *See Reed Elsevier,* 130 S.Ct. at 1247.

4. This decision was issued after briefing on this motion were completed. UFI subsequently called it to the Court's attention.

rect an error in a copyright registration), and "contacted the Copyright Office to ask about its registration of a single unpublished work that contained both published and unpublished designs." *Id.* "The Copyright Office told [the plaintiff] that the unpublished designs [which included the design at issue in the lawsuit] would retain copyright protection *but that the previously published designs would not.*" *Id.* (emphasis added). The plaintiff subsequently filed a second application for supplementary registration, removing the previously published designs from the registration; the Copyright Office approved the application and issued a certificate of supplementary registration. *Id.* at 846.

As these cases hold, the Mod Squad design, which was concededly published prior to the registration of the unpublished collection at issue, is not protected by UFI's putative Registration (VAu 978–345). This prior publication does not invalidate registration of the unpublished elements of the collection (there are apparently six previously unpublished designs among the 19 in the collection), but it does invalidate the registration as to the previously published designs, including the one in the case at bar. Thus, I find that the FD Defendants have rebutted the presumption of validity that attached to UFI's certificate of copyright registration. *See McLaren,* 2010 WL 4615772, at *4 (finding presumption of validity rebutted, and holding that a copyright registration was invalid as a matter of law). Because the Mod Squad design is not covered by the Registration, UFI cannot bring its counterclaims for infringement of its Mod Squad design.

■ UFI's arguments to the contrary are unavailing. The main thrust of UFI's argument is that a showing of fraud on the Copyright Office is required to invalidate a copyright registration. But that is only the case where a party seeks to invalidate a copyright based on simple technical errors in a registration application:

> The courts generally have been most lenient, under both the 1909 Act and the current Act, with respect to any innocent error contained in an application for a registration certificate. Simply stated, a misstatement or clerical error in the registration application, if unaccompanied by fraud, should neither invalidate the copyright nor render the registration certificate incapable of supporting an infringement action. *However, this conclusion pertains only to the extent that the work in question would still have been eligible for copyright had the registration application contained a correct statement of the facts.* If the claimant willfully misstates or fails to state a fact that, if known, might have caused the Copyright Office to reject the application, then the registration may be ruled invalid.

*Nimmer on Copyrights* § 7.20[B][1] (emphasis added). The fraud requirement does not come into play when material omissions or errors were made in the registration application. *See Masquerade Novelty, Inc. v. Unique Indus., Inc.,* 912 F.2d 663, 668 n. 5 (3d Cir.1990) ("It may be that the correct approach in situations where there has been a material, but inadvertent omission, is to deprive the plaintiff of the benefits of [the presumption of validity] and to require him to establish the copyrightability of the articles he claims are being infringed."); *Nimmer on Copyright* § 7.20[B][1] n. 25.2, 25.3.

The question for the Court is whether the inclusion of 13 previously unpublished designs—including the design that is the basis for this lawsuit—in a collection of purportedly unpublished designs is a *material* error or simply a *technical* error. Because the error invalidates the registration

as to the very design that is the subject of this lawsuit, I conclude that it is *material.*

In *L.A. Printex,* discussed above, the panel held that the inclusion of two previously published designs in an unpublished collection registration—admittedly an "error"—did not invalidate the registration, or render the certificate of registration incapable of supporting an infringement action, because, in part, the record did not demonstrate that the plaintiff intended to defraud the Copyright Office. *L.A. Printex Indus.,* 676 F.3d at 854. However, *L.A. Printex* presented the inverse of the situation before me: in that case the plaintiff did not assert that the defendant infringed the previously published designs that had been improperly included in the collection registration. Rather, it alleged that the defendant infringed an *unpublished* design in the registered collection. Accordingly, the panel found inclusion of the published designs was a minor technical error that did not affect the registration of the unpublished—or properly included—designs, which the plaintiff nevertheless corrected with the assistance of the Register of Copyrights and a supplementary registration. *See id.* at 853–54. It would have been inequitable for the panel to invalidate the whole copyright registration, even the portions that were properly registered, absent a showing of fraud.

Here, by contrast, UFI alleges that the FD Defendants infringed a previously published work that it included as part of a collection of unpublished works. Furthermore, UFI did not supplement its original registration by deleting the previously published Mod Squad design from the collection registration; *instead it deleted the unpublished* designs from the collection,

thus rendering the original registration wholly nugatory. That cannot be considered a "minor technical error."

UFI's citation to an unpublished motion for reconsideration in *Double Zero, Inc. v. The TJX Copyright,* No. CV 10–5241(CBM) (JCGX) (C.D.Cal. Sept. 22, 2011) (ECF No. 143), is similarly unhelpful to its case. There, the defendants claimed that the plaintiff's single registration for an unpublished collection was invalid, because information obtained after the court issued its opinion established that at least two of the designs included in the collection were published prior to the copyright's date of registration. The court rejected the defendants' argument without much discussion, holding that, "in the absence of evidence that Plaintiff defrauded the Copyright Office, such errors are not cause for invalidation of the copyright." *Id.* at 4. Again, however, the two previously published designs were not the designs that the defendant allegedly infringed. Just as in *L.A. Printex,* the inclusion of the published designs was a minor technical error that did not affect the registration status of the unpublished designs.

Resort to cases discussing the validity of published collection single registrations shows the flaws in UFI's reasoning. In *McLaren v. Chico's FAS, Inc.,* No. 10 Civ. 2481(JSR), 2010 WL 4615772 (S.D.N.Y. Nov. 9, 2010), the defendant moved to dismiss the case on the basis that plaintiff's copyright registration was invalid. The plaintiff had a single work registration for a published collection of illustrations (instead of for an unpublished collection, like here).[5] The defendant contended that plaintiff's copyright did not satisfy the requirements for a published collection single work registration because plaintiff had

---

5. A published collection consists of "All copyrightable elements that are otherwise recognizable as self-contained works, that are in-

cluded in a single unit of publication, and in which the copyright claimant is the same." 37 C.F.R. § 202.3(b)(4).

published her illustrations separately, prior to publishing them as a collection.

The court held that the separate publication of the illustrations rendered the collective copyright registration invalid and dismissed the case for failure to have a valid registration on file when the suit was brought. The court rejected plaintiff's reliance on the presumption of validity that attaches to a copyright registration, finding that the defendant "rebutted [the presumption] here by showing that the registration is invalid as a matter of law due to the prior registration of some of these works." *Id.* at *4. It did so without questioning whether the plaintiff knew that her registration contained errors, and even noted that the court was "not without sympathy for plaintiff, whose decision to seek a 'single work' registration for the Collection rather than register the drawings individually was apparently based on the advice of her prior copyright counsel." *Id.* at *4 n. 3.

UFI argues that the Prioritizing Resources and Organization for Intellectual Property Act of 2008 (the "PRO IP Act") prevents a court from invalidating a copyright registration without a showing of fraud. In 2008, as part of the PRO IP Act, Congress amended 17 U.S.C. § 411 to provide that a certificate of registration satisfies the section's requirements, "regardless of whether the certificate contains any inaccurate information, unless" the following two requirements are met:

(A) the inaccurate information was included on the application for copyright registration with knowledge that it was inaccurate; and

(B) the inaccuracy of the information, if known, would have caused the Register of Copyrights to refuse registration.

17 U.S.C. § 411(b)(1).

The PRO IP Act does not apply in this case. The PRO IP Act solely concerns technical and minor errors with copyright registrations. According to a leading treatise:

> The legislative history for the PRO IP Act explains that the amendment aims to close the loophole whereby intellectual property thieves argue that a mistake in the registration documents, such as checking the wrong box on the registration form, renders a registration invalid and thus forecloses the availability of statutory damages.

*Nimmer on Copyright* § 7.20[B][2] (internal quotations and footnotes omitted).

Here, the "error" on UFI's registration form is not a minor technical error. The "error" here would have clearly caused the Register of Copyrights to refuse to issue a registration for a collection of purportedly unpublished works that included the Mod Squad design and 12 other previously published designs—and only six unpublished designs. Thus, this issue is more appropriately dealt with by ascertaining whether the registration should have issued in the first place, and that analysis does not require a showing of fraud. *See McLaren,* 2010 WL 4615772; *Koster,* 1993 WL 120463; *L.A. Printex Indus., Inc. v. Aeropostale,* 466 Fed.Appx. 590 (9th Cir.2012).

In addition, the PRO IP Act only applies to §§ 411 and 412 of the Copyright Act. The former sets forth the prerequisites for instituting a civil action, and the latter sets forth the prerequisites for obtaining the heightened remedies that flow from timely registration.

By contrast, the strictures regarding the *prima facie* presumption attaching to a registration certificate are set forth in 17 U.S.C. § 410, which is not referenced in the provision added via the PRO IP Act. Accordingly, a tight reading of the 2008 amendment preserves a differential impact ... *whereby inadvertent errors deprive the certificate of its presumption of validity.*

*Nimmer on Copyright* § 7.20[B][1] n. 25.2, 25.3.

Because the presumption of validity has been rebutted as to the previously published designs in the collection, including the Mod Squad, the Registration relied on by UFI when it brought its counterclaims does not satisfy as a prerequisite to suit.

## IV. UFI's "Supplementary Registration"

In view of the foregoing, I would normally dismiss UFI's counterclaims without prejudice to renewal after UFI obtained a valid copyright registration. *See Koster*, 1993 WL 120463, at *1 (dismissing the case for lack of a valid copyright, but without prejudice "to its being revived after valid copyright registrations are obtained."). In this case, however, UFI argues that it does not matter whether I find its copyright registration invalid as to the Mod Squad design, because: (1) it filed a supplementary registration for the above discussed unpublished collection, upon which it can bring its copyright infringement counterclaims; and (2) it has a separate copyright registration in the Mod Squad design's source artwork, and thus any derivative works, like the Mod Squad design. I turn to these issues next.

UFI's incredibly late supplementary registration (if it indeed filed it and the Register of Copyrights approved it) presents questions that the parties have not briefed. This includes whether I should even consider the registration at this late stage; at first glance, it appears that I likely must, because, barring a statute of limitations issue, "The information contained in a supplementary registration augments but does not supersede that contained in the earlier registration." 17 U.S.C. § 408.

But, as described by UFI, the putative supplementary registration appears to be invalid. If UFI indeed dropped all designs other than the Mod Squad from the registration (and its letter clearly states that the Form CA "removed all designs other than the Mod Squad from the registration"), it does not sound much like an *unpublished collection*—it only has one item (not a collection), and that item has admittedly been published (not unpublished). In addition, language in the Compendium seems to militate against the validity of the amendment as UFI represented to the Court: "Where a published work was incorrectly registered as unpublished, a supplementary registration is generally inappropriate, since the deposit requirements will not ordinarily have been met. In such cases, a new basic registration should be made." United States Copyright Office, *Compendium of Office Practices II* § 1507.07(a).

UFI's delay in "amending" its registration is, giving all benefit of the doubt to UFI, extremely poor lawyering, and, at worst, a deliberate attempt to impose costs on its adversary; it has wasted the Court's time, and it has wasted the FD Defendants' time and money.[6] However, I have no choice but to request briefing on the impact, if any, that the putative supplementary registration has on the viability of this case. UFI is to turn over the supplementary registration to the FD Defendants immediately, and the parties are to come to my courtroom on September 21, 2012, at 10:30 a.m. prepared to argue the issue.

## V. UFI Is Not Permitted To Amend Its Complaint To Include The "Original Design" Copyright

■ In its opposition to the FD Defendants' cross-motion, UFI also claims that

---

**6.** At our next conference we will discuss the issue of sanctions.

it holds a "registration for the source artwork that it used to develop the Mod Squad design," (the "Source Registration") and that it produced this registration during discovery. It claims, rather shamelessly, "UFI's cross-claims did not cite any particular registration, but gave notice that the design is covered by a registration." It attempts to use that ambiguity in its favor.

The FD Defendants contend that UFI should not be allowed to "amend" its counterclaims at this late stage.

I agree with the FD Defendants. UFI's attempt to introduce the Source Registration in its opposition is a blatant attempt to change the theory of the case after the close of discovery, and I will not allow it.

While UFI is correct that its counterclaims were vague, its counterclaims clearly referred to only one copyright:

> Prior to the conduct complained of herein, Counterclaimant applied for and received *a United States Copyright Registration* for the Subject Design ...
> Counterclaimant is informed and believes and thereon alleges that Counter-Defendants, and each of them, infringed *Counterclaimant's copyright* by creating, making and/or developing directly infringing and/or derivative works from the Subject Design and by producing, distributing and/or selling garments which infringe the Subject Design through a nationwide network of retail stores and on-line outlets ...

(Counterclaim ¶¶ 8, 13 (emphasis added).) And Family Dollar's declaratory judgment complaint attached UFI's cease-and-desist letter that clearly stated that the copyright in dispute was "VA 978–345" (the omission of the "u" from "VA" was probably a typo), and attached a copy of the Registration which I just found to be invalid as to the Mod Squad design. Thus, it was abundantly clear from the pleadings that only

one copyright was at issue, and that copyright was the Registration—VAu 978–345.

■ If UFI wanted to assert that the FD Defendants also violated the Source Registration, it should have amended its counterclaims by August 31, 2011, the deadline I set in my case management plan. (ECF No. 8.) Failing to do so, it could have moved for leave to amend its complaint after the deadline passed (which I certainly would have denied if made after the close of discovery). *See* Fed.R.Civ.P. 15(a)(2). But UFI did neither. Rather, UFI tried to add a completely new theory of copyright infringement to the case—by asserting that the FD Defendants' infringed the Source Registration—in its opposition to the FD Defendants' cross-motion. This it cannot do: "An opposition to a summary judgment motion is not the place for a plaintiff to raise new claims." *Lyman v. CSX Transp., Inc.*, 364 Fed.Appx. 699, 701 (2d Cir.2010) (quoting Charles Alan Wright & Arthur R. Miller, *Fed. Prac. and P.* § 1183 at 23 n. 9 (3d ed.2004)). These failures give me the right to deny UFI leave to amend now.

Furthermore, if that were not enough (which it is), I would not have allowed UFI to amend its complaint now as a sanction for UFI's discovery abuses. Only through discovery did the issue of the validity of the registration come to light. And obtaining that discovery was like pulling teeth; Magistrate Judge Francis even determined that sanctions were appropriate for UFI's disregard for one of my direct orders to produce documents. *Family Dollar Stores, Inc. v. United Fabrics Int'l, Inc.*, No. 11 CIV. 2574 CM JCF, 2012 WL 1123736, at *7 (S.D.N.Y. Apr. 4, 2012) (Francis, M.J.) (holding that sanctions are appropriate for UFI's flouting of this Court's February 14 discovery order (ECF No. 46)).

For these reasons, I will not consider UFI's backdoor attempt to introduce a new theory of copyright infringement into this case.

## CONCLUSION

For the reasons discussed above, UFI's motion for partial summary judgment is denied, and the FD Defendants' motions for summary judgment and to withdraw its "admissions" are granted. UFI's counter-claims for copyright infringement of the Mod Squad design are dismissed to the extent that they are premised on the copy-right registration number "VAu 978–345." I am not closing the case yet, however, in light of the fact that UFI may have filed a supplementary registration. The parties are to attend a conference in my court-room at 10:30 a.m., September 21, 2012, to discuss how to proceed.

The Clerk of Court is directed to remove the motions at ECF Nos. 15, 27, and 30 from the Court's list of outstanding mo-tions.